ACCEPTED
12-15-00216-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
9/3/2015 2:56:56 PM
Pam Estes
CLERK

NO. _____

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

9/3/2015 2:56:56 PM

PAM ESTES
Clerk

IN THE
COURT OF APPEALS
FOR THE
TWELFTH DISTRICT OF TEXAS

IN RE THOMAS LYTLE AND ELLEN LYTLE,
Relators,

v.

THE HONORABLE TERESA DRUM, JUDGE
PRESIDING 294TH JUDICIAL DISTRICT
COURT OF VAN ZANDT COUNTY, TEXAS,
Respondent,

Real Parties in Interest:

David C. Petruska
Sandra L. Petruska
Helmuth K. Gutzke and
Zackiann Gutzke,
Defendants.

APPENDIX TO PETITION
FOR WRIT OF MANDAMUS
PART 2

Barbara L. Emerson, Esq.
Texas State Bar No. 06599400
BELLINGER & SUBERG, LLP
10,000 N. Central Expy., Suite 900
Dallas, TX 75231
214.954.9540 – Telephone
214.954.9541 – Facsimile
bemerson@bd-law.com

ORAL ARGUMENT REQUESTED

Filed 2/12/2015 11:41:54 AM
Karen L. Wilson
District Clerk
Van Zandt County, Texas
Malisa Chaney

Holly Spindle

CAUSE NO. 14-00172

| | | |
|---|---|---|
| THOMAS LYTLE AND ELLEN LYTLE | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| DAVID C. PETRUSKA, SANDRA L. | § | 294TH JUDICIAL DISTRICT |
| PETRUSKA, COMPASS BANK, | § | |
| HELMUTH K. GUTZKE AND | § | |
| ZACKIANN GUTZKE | § | VAN ZANDT COUNTY, TEXAS |

## PLAINTIFFS' FIRST AMENDED PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COME** Thomas Lytle and Ellen Lytle, hereinafter called Plaintiffs, and file Plaintiffs' First Amended Petition, complaining of and about David C. Petruska, Sandra L. Petruska, Helmuth K. Gutzke, and Zackiann Gutzke, hereinafter called Defendants, and for cause of action would show unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.     Plaintiffs intend that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.     Plaintiff, Thomas Lytle, is an individual whose address is 1603 Van Zandt County Road 2319, Canton, Texas 75103.

3.     Plaintiff, Ellen Lytle, is an individual whose address is 1603 Van Zandt County Road 2319, Canton, Texas 75103.

4.     Defendant David C. Petruska has appeared in this case and no service of process is necessary at this time.

5.     Defendant Sandra L. Petruska has appeared in this case and no service of process is necessary at this time.

PLAINTIFFS' FIRST AMENDED PETITION
\\Bdnt-fs1\wpprolaw\3191.002\267954.docx



TAB 4

6. Defendant Helmuth K. Gutzke has appeared in this case and no service of process is necessary at this time.

7. Defendant Zackiann Gutzke has appeared in this case and no service of process is necessary at this time.

## JURISDICTION AND VENUE

8. The court has jurisdiction over this action to quiet title pursuant to Article V, Section 8 of the Texas Constitution and Section 26.043(8) of the Texas Government Code.

9. Venue in Van Zandt County is proper in this cause under Section 15.011 of the Texas Civil Practice and Remedies Code because this action involves real property located in Van Zandt County.

10. The damages sought herein are within the jurisdictional limits of this Court.

11. This suit seeks monetary relief of $100,000 or less and non-monetary relief.

## FACTS

12. This is an action to quiet title on real property, hereafter referred to as "the Property", and for damages for a fraudulent claim filed against real property in violation of Texas Civ. Prac. & Rem. Code § 12.002. The Property is described as follows:

> Roadway situated in Van Zandt County, State of Texas, on the M.V. Lout Survey, A-468 and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 609, of the Van Zandt County Real Records and a part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 629, of the Van Zandt County Real Records.

13. Plaintiffs are the rightful owners, entitled to possession of the Property by virtue of General Warranty Deeds recorded in Volume 1771, Page 609 and Volume 1775, Page 629 in Real Property Records of Van Zandt County, Texas.

Page 2

**APPENDIX 24**

14. On May 16, 2008, Plaintiffs were wrongfully dispossessed of the Property when a General Warranty Deed with Vendor's Lien was executed by Helmuth K. Gutzke and Zackiann Gutzke (collectively, "**Gutzke**") purporting to convey to David C. Petruska and Sandra L. Petruska (collectively, "**Petruska**") an easement on the Property (the "**Deed**"). Said easement never existed and was never granted by the Plaintiffs or their predecessors-in-interest.

15. The Deed was filed of record May 20, 2008, as Document No. 2008-004602 in the Real Property Records of Van Zandt County, Texas.

16. On May 16, 2008, Plaintiffs were further wrongfully dispossessed of the Property when Petruska executed a Deed of Trust which purported to convey the easement for the benefit of Compass Bank. That Deed of Trust was filed of record May 20, 2008 as Document No. 2008-004603 in the Real Property Records of Van Zandt County, Texas.

17. Defendants Petruska purport to have an adverse claim or interest in the Property that operates as a cloud on Plaintiffs' title to the Property and through pleadings before this Court continue to assert that on May 16, 2008 they acquired an interest in the Property. The nature of the interest asserted by Petruska in the Property is an easement on Plaintiff's Property.

18. The claim or interest purportedly conveyed to Petruska is invalid, unenforceable or without right against Plaintiffs because no easement ever existed. Gutzke did not have any easement or rights to convey. The Deed of Trust signed by Petruska lists an easement that never existed and was never granted. In order for Plaintiffs to enjoy title to the Property, the adverse estate or interest claimed and still claimed by Petruska and as set forth in the Deed and Deed of Trust must be removed.



19. At the time of the conveyance from the Defendants Gutzke to Defendants Petruska, all parties to the transaction knew no such easement existed and knowingly created a false and fraudulent interest in the Property of Plaintiffs.

20. At the time of the conveyance in the Deed of Trust for the benefit of Defendant Compass Bank, Petruska knew no such easement existed and knowingly created a false and fraudulent interest in the Property of Plaintiffs.

21. In executing and causing to have the Deed and the Deed of Trust to be filed, Defendants knowingly participated in creating a false claim in the Property with the intent to cause Plaintiffs financial injury by imposing burdens and encumbrances on the real property of Plaintiffs.

22. Any claim that an easement in the Property existed at any time is invalid and unenforceable. In order for Plaintiffs to enjoy title to the Property, any claim that an easement existed or was conveyed by the Deed and Deed of Trust must be removed and declared null and void.

23. Petruska has taken actions to assert his rights to the easement, including coming onto Plaintiffs' property and threatening Plaintiff Thomas Lytle with an assault rifle, and continuing to assert an easement existed in his pleadings before this Court. Plaintiffs have been forced to retain an attorney who sent a demand for release of any claim for an easement to Petruska and Compass Bank. While Petruska refused to consent, Compass Bank ultimately executed a Release of Easement and Petruska continues to seek a declaration that he held a valid easement and conveyed a valid easement under the Deed of Trust. Plaintiffs have been forced to incur the cost and expense of seeking to clear title to their property.

APPENDIX 26

## DECLARATORY JUDGMENT

24. Pursuant to Section 37.001 *et seq.* of the Texas Civil Practice and Remedies Code, Plaintiffs request a declaratory judgment that Plaintiffs are the sole and rightful owners of the Property and declaring **all claims** to an easement at any time or currently are null and void.

25. Plaintiffs further request that Defendants be required to execute a correction deed for the General Warranty Deed with Vendor's Lien and Deed of Trust, and file it with the Real Property Records in Van Zandt County.

## CLAIM FOR DAMAGES

26. The alleged conveyance of the easement was a fraudulent interest in Plaintiffs' Property.

27. Pursuant to **Section 12.002(b)** of the Texas Civil Practice and & Remedies Code, Plaintiffs seek recovery of damages, court costs and attorneys' fees.

## ATTORNEYS' FEES

28. Pursuant to **Section 37.001** *et seq.* of the Texas Civil Practice & Remedies Code, Plaintiffs seek recovery of court costs and attorneys' fees as are equitable and just.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, Thomas Lytle and Ellen Lytle, respectfully requests that Defendants be cited to appear and answer, and that on the final trial, the court grant Plaintiffs judgment quieting title to the Property and removing cloud on Plaintiffs' title; declaratory judgment; damages; attorney fees; award of costs, and any other relief at law or in equity to which Plaintiffs are entitled.

APPENDIX 27

Respectfully submitted,

**BELLINGER & SUBERG, L.L.P.**

By: _____

BARBARA L. EMERSON
Texas State Bar No. 06599400
10,000 N. Central Expy, Suite 900
Dallas, Texas 75231
Telephone: 214/954-9540
Facsimile: 214/954-9541
bemerson@bd-law.com

**ATTORNEY FOR PLAINTIFFS,**
**THOMAS LYTLE AND ELLEN LYTLE**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of foregoing has been forwarded to all counsel via eservice and email on the 12th day of February, 2015 as provided below.

Ralph E. Allen
Attorney and Counselor at Law
100 East Ferguson, Suite 901
Tyler, Texas 75702
(903) 593-9727 Telephone
rallen@tyler.net

Michael F. Pezzulli
M. Ellen Skinner
Christopher L. Barnes
Pezzulli Barnes, LLP
17300 Preston Road, Suite 220
Dallas, TX 75252-5476
(972) 713-1300 Telephone
michael@courtroom.com
Ellen@courtroom.com
Chris@courtroom.com

_____
Barbara L. Emerson



I certify this to be a true and exact copy of the original on file in the District Clerk's Office.

DEPUTY CLERK

CLERK DISTRICT COURT TEXAS

**APPENDIX 28**

PDF Original Image of 712 F.2d 133 (PDF)
KeyCite Yellow Flag - Negative Treatment
Distinguished by U.S. v. Gieger Transfer Service, Inc.,
S.D.Miss., August 18, 1997

712 F.2d 133
United States Court of Appeals,
Fifth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
LITTLE AL, a/k/a Texas Ranger, Etc., et al.,
Defendants,
Charles Thomas Pollard, Claimant-Appellant.

No. 82–2300 | Summary Calendar. | Aug. 15, 1983.

Claimant of vessels that Government sought to have forfeited appealed from a summary judgment of the United States District Court for the Southern District of Texas, Hugh Gibson, J., in favor of the Government. The Court of Appeals, Reavley, Circuit Judge, held that: (1) district court did not abuse its discretion in denying claimant's motion for a continuance during pendency of claimant's appeal from a criminal conviction that stemmed from his part in marijuana importation scheme during which vessels were seized, giving rise to forfeiture action, and (2) in absence of any exercise by claimant of right to come forward and show that facts constituting probable cause, that is, that reasonable grounds existed to believe that claimant's vessels were used or intended to be used for prohibited purposes, did not actually exist, Government was entitled to forfeiture of vessels.

Affirmed.

West Headnotes (7)

[1] **Federal Courts**
🔑Continuance and stay

Moving for a continuance invokes discretion of district court, and only an abuse of that discretion will justify reversal. Fed.Rules Civ.Proc.Rule 56(f), 28 U.S.C.A.

4 Cases that cite this headnote

[2] **Action**
🔑Nature and subject matter of actions in general

A district court may stay a civil proceeding during pendency of a parallel criminal proceeding.

31 Cases that cite this headnote

[3] **Controlled Substances**
🔑Time for proceedings

Affidavit of counsel of claimant of ownership interest in vessels for which United States sought forfeiture seeking continuance of forfeiture proceeding during pendency of individual's appeal from a criminal conviction that stemmed from his part in marijuana importation scheme which resulted in arrest of individual and seizure of vessels amounted to nothing more than blanket assertion of Fifth Amendment privilege against compulsory self-incrimination in light of lack of explanation as to how filing of affidavit in response to forfeiture proceeding would have prejudiced criminal appeals of claimant, and, as such, did not present type of circumstances or prejudice that required a stay. U.S.C.A. Const.Amend. 5; Fed.Rules Civ.Proc.Rule 56(f), 28 U.S.C.A.

37 Cases that cite this headnote

[4] **Controlled Substances**
🔑Grounds

Under forfeiture statutes, property is subject to forfeiture if it was used in any manner to facilitate sale or transportation of controlled substances. Tariff Act of 1930, §§ 596, 615, as amended, 19 U.S.C.A. §§ 1595a, 1615; Comprehensive Drug Abuse Prevention and

APPENDIX 29
TAB 5

Control Act of 1970, §§ 511, 511(b)(4), 21 U.S.C.A. §§ 881, 881(b)(4); Contraband Seizure Act, §§ 1, 2, 4, 49 U.S.C.A. §§ 781, 782, 784.

2 Cases that cite this headnote

[5] **Forfeitures**
⮕Presumptions and Burden of Proof

Any claimant of property sought to be forfeited must establish either that property is not subject to forfeiture, or that a defense to forfeiture applies. Tariff Act of 1930, §§ 596, 615, as amended, 19 U.S.C.A. §§ 1595a, 1615; Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 511, 511(b)(4), 21 U.S.C.A. §§ 881, 881(b)(4); Contraband Seizure Act, §§ 1, 2, 4, 49 U.S.C.A. §§ 781, 782, 784.

2 Cases that cite this headnote

[6] **Forfeitures**
⮕Probable or Reasonable Cause

If unrebutted, a showing of probable cause alone will support a forfeiture.

31 Cases that cite this headnote

[7] **Forfeitures**
⮕Automobiles and other vehicles; means of transport

In absence of any exercise by claimant of property which Government sought to have forfeited under forfeiture laws of right to come forward and show that facts constituting probable cause on issue of whether claimant's vessels were used or intended to be used for prohibited purposes did not actually exist, Government was entitled to forfeiture of vessels. Tariff Act of 1930, §§ 596, 615, as amended, 19 U.S.C.A. §§ 1595a, 1615; Comprehensive Drug Abuse Prevention and Control Act of 1970, §§

511, 511(b)(4), 21 U.S.C.A. §§ 881, 881(b)(4); Contraband Seizure Act, §§ 1, 2, 4, 49 U.S.C.A. §§ 781, 782, 784.

47 Cases that cite this headnote

**Attorneys and Law Firms**

*134 Michael A. Maness, Mark Vela, Houston, Tex., for claimant-appellant.

Frances H. Stacy, Jack Shepherd, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Appeal from the United States District Court for the Southern District of Texas.

Before REAVLEY, GARWOOD and JOLLY, Circuit Judges.

**Opinion**

REAVLEY, Circuit Judge:

This case concerns the forfeiture of three vessels allegedly used in a scheme to import marijuana. Appellant Charles Pollard, who claims an ownership interest in the vessels, appeals from the entry of judgment in favor of the government. He argues that the district court punished his exercise of the privilege against self-incrimination by refusing to continue the action during the pendency of Pollard's appeal from a criminal conviction that stemmed from his part in the importation scheme. We affirm.

The factual background of the seizure of the three vessels appears in detail in *United States v. Scott,* 678 F.2d 606 (5th Cir.1982) *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 285 (1982). We reiterate the *135 essential facts. The U.S. Coast Guard boarded the unmanned fishing vessel LITTLE AL on April 6, 1981 and discovered over fifteen tons of marijuana aboard. The coast guard, based on prior surveillance, stopped the other two vessels, TYRANT III and DORADO, and arrested their crews and passengers. The twelve men found on board, including appellant Pollard, were convicted of conspiring to import and to possess with intent to distribute the marijuana found on LITTLE AL. We affirmed Pollard's conviction, but reversed the convictions of seven of his codefendants.

APPENDIX 30

The government filed this forfeiture action on October 13, 1981. While the convictions were awaiting appellate review, the government filed a motion for summary judgment in the forfeiture action and supported the motion with affidavits by coast guard personnel who had participated in the seizure of the three vessels. Pollard filed no opposing affidavits.

Pollard, however, did invoke the continuance procedure under Fed.R.Civ.P. 56(f), which empowers the district court to continue or deny a summary judgment motion when the nonmoving party cannot present opposing affidavits. Pollard's counsel averred that he could not obtain affidavits from Pollard or his codefendants for fear of "substantial prejudice" to their criminal appeals. The affidavit did not specify the nature of the prejudice or the nature of the evidence that might become available if the court granted the continuance.

The district court granted summary judgment, noting that Pollard had not made a sufficient showing of inability to present facts. The affidavit of Pollard's counsel, in the court's view, merely evinced reluctance to oppose the motion during the pendency of the criminal appeals.

### 1. Denial of the Continuance

[1] Moving for a continuance under Rule 56(f) invokes the discretion of the district court, and only an abuse of that discretion will justify reversal. *American Lease Plans v. Silver Sand Co.,* 637 F.2d 311, 317–18 (5th Cir.1981). The party seeking the continuance bears the burden of demonstrating the need for a continuance. As we have observed:

Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by rule 56(e) and by specifically demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.

*SEC v. Spence & Green,* 612 F.2d 896, 901 (5th Cir.1980) (citations omitted), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981).

Pollard does not diminish this burden by resting his request for a continuance on the privilege against self-incrimination. As the Supreme Court has noted recently:

[W]hile the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness ... declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production. We think the view of the Court of Appeals [that invocation of the privilege satisfies a burden of production] would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his. None of our cases support this view.

*United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 1552–53, 75 L.Ed.2d 521 (1983). Accordingly, a blanket assertion of the privilege neither excuses the burden under rule 56(e) of controverting the government's affidavits nor carries the burden under rule 56(f) of explaining either the *136 inability to respond or the benefit to be derived from postponement.

The affidavit submitted by Pollard's counsel amounts to nothing more than blanket assertion of the privilege. No explanation appears concerning how the filing of an affidavit would have prejudiced the criminal appeals of Pollard or his codefendants. No explanation appears concerning what the affidavits could have disclosed. No explanation appears concerning why affidavits would have been any more available after termination of the criminal appeal.

[2] [3] Certainly, a district court may stay a civil proceeding during the pendency of a parallel criminal proceeding. *See SEC v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 668 (5th Cir.1981). Such a stay contemplates "special circumstances" and the need to avoid "substantial and irreparable prejudice." *Id.* The very fact of a parallel criminal proceeding, however, did not alone undercut Pollard's privilege against self-incrimination, even though the pendency of the criminal action "forced him to choose between preserving his privilege against self-incrimination and losing the civil suit." *Hoover v.*

APPENDIX 31

*Knight,* 678 F.2d 578, 581 (5th Cir.1982). This case hardly presents the type of circumstances or prejudice that require a stay.

## 2. Propriety of Summary Judgment

Pollard argues, alternatively, that the court erred by entering summary judgment even if its procedures did not infringe the privilege against self-incrimination. In Pollard's view, the government's affidavits do not demonstrate that the vessels were used or intended to be used to smuggle marijuana. Pollard argues that the affidavits depend upon conflicting inferences that the court could have drawn and that entry of judgment contravened the principle of drawing all inferences favorable to the nonmoving party.

The government affidavits do depend on inferences from these facts: (1) the LITTLE AL contained over fifteen tons of marijuana; (2) coast guard surveillance established that the TYRANT III had been alongside LITTLE AL early in the day and that TYRANT III, in turn, had been alongside DORADO;[1] (3) the fingerprints of two passengers on board TYRANT III were discovered on nautical maps found on board LITTLE AL; (4) the coast guard had observed someone on board TYRANT III pass a roll of plastic wrap to someone on board DORADO; and (5) no other vessels were observed in contact with LITTLE AL, TYRANT III or DORADO.

> [1] Under 19 U.S.C. § 1615(3), the contact among the vessels provides prima facie evidence of "visits" among the vessels.

[4] [5] If the government bore the burden of proving by a preponderance of the evidence that the vessels were used or intended to be used in importing the marijuana, the judgment as to these vessels might be in question. The forfeiture statutes, however, place the government's burden at a lower threshold. It must establish only that reasonable grounds exist to believe that the vessels were used or intended to be used for prohibited purposes. 21 U.S.C.A. § 881(b)(4) (West 1981);[2] *See United States v. 1964 Beechcraft Baron Aircraft,* 691 F.2d 725, 727 (5th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983). The property is subject to forfeiture if it was used "in any manner" to facilitate sale or transportation. *Id.* Any claimant of the property must establish either that the property is not subject to forfeiture, or that a defense to the forfeiture applies. *See United States v. $364,960.00 in U.S. Currency,* 661 F.2d 319, 325 (5th Cir.1981).

> [2] The district court ordered the forfeiture under four statutes, 19 U.S.C. § 1595a; 49 U.S.C. §§ 781, 782; and 21 U.S.C. § 881. The procedures under these statutes are substantially similar; a showing of probable cause likewise shifts the burden of proof. *See* 19 U.S.C. § 1615; 49 U.S.C. § 784.

[6] [7] If unrebutted, a showing of probable cause alone will support a forfeiture. *See United States v. One 1975 Ford Pickup Truck,* 558 F.2d 755, 756–57 (5th Cir.1977) (upholding forfeiture based on unrebutted showing of probable cause). If Pollard had *137 controverted facts upon which the probable cause showing relied, summary judgment would have been improper. *United States v. One 1944 Steel Hull Freighter,* 697 F.2d 1030, 1031–32 (11th Cir.1983). As the Court of Appeals for the Sixth Circuit, however, has noted:

> While we cannot agree with the government's insistance that probable cause is all that is needed by way of proof to justify a forfeiture even in the face of overwhelming proof that the cause, though probable, was not ultimately sustained, it is apparent to us that a showing of probable cause is sufficient to warrant a forfeiture and that summary judgment was properly entered in the absence of any exercise by the claimant of her right to come forward and show that the facts constituting probable cause did not actually exist.

*United States v. One 1975 Mercedes 280S,* 590 F.2d 196, 199 (6th Cir.1978); *see United States v. One 1974 Porsche 911–S,* 682 F.2d 283, 285–86 (1st Cir.1982).

Even drawing inferences favorable to Pollard, we perceive no genuine issue of material fact as to probable cause. He has not undercut the factual basis shown by the government.

AFFIRMED.

## All Citations

712 F.2d 133, 37 Fed.R.Serv.2d 482

APPENDIX 32

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**APPENDIX 33**

Original Image of 625 F.Supp.2d 391 (PDF)

KeyCite Yellow Flag - Negative Treatment
Distinguished by Klein v. Silversea Cruises, Ltd., N.D.Tex., December 16, 2014

625 F.Supp.2d 391
United States District Court,
S.D. Texas,
Laredo Division.

Cynthia ALCALA, et al., Plaintiffs,
v.
TEXAS WEBB COUNTY, et al., Defendants.

Civil Action No. L–08–0128. | May 1, 2009. |
Opinion Denying Emergency Motion June 1, 2009.

**Synopsis**
**Background:** Former employees of county tax assessor's office brought § 1983 action against county, assessor, and other officials within office, alleging that employees had been required to participate in assessor's political campaigns and in raffles benefiting assessor as conditions of employment. Tax assessor and one defendant official moved for stay pending resolution of related criminal charges against official/movant.

**Holdings:** The District Court, J. Scott Hacker, United States Magistrate Judge, held that:

[1] official/movant's interests weighed against grant of complete stay;

[2] former employees' interests also weighed against grant of complete stay;

[3] Court's own interests weighed against grant of complete stay;

[4] interests of public and third parties also weighed against grant of complete stay; and

[5] per Micaela Alvarez, J., on tax assessor's emergency motion, indictment of tax assessor in state court for organized gambling promotion did not warrant complete stay of employees' § 1983 action.

Motion granted in part and denied in part.

West Headnotes (12)

[1] **Action**
⚖ Nature and Subject Matter of Actions in General

Whether to stay civil action pending resolution of parallel criminal prosecution is not matter of constitutional right, but rather one of court discretion exercised in interests of justice; there exists no general constitutional, statutory, or common-law prohibition against prosecution of parallel criminal and civil actions, even where such actions proceed simultaneously.

5 Cases that cite this headnote

[2] **Action**
⚖ Another Action Pending

District court's discretionary authority to stay proceeding pending resolution of parallel proceeding stems from its inherent authority to control disposition of cases on its own docket.

Cases that cite this headnote

[3] **Action**
⚖ Nature and Subject Matter of Actions in General

Complete stay of pending civil action until conclusion of related criminal proceeding is considered an extraordinary remedy.

Cases that cite this headnote

[4] **Action**
⚖ Nature and Subject Matter of Actions in

APPENDIX 34

**General**

In civil case, there is strong presumption in favor of discovery, and party who moves for stay pending resolution of related criminal proceeding has burden to overcome presumption.

5 Cases that cite this headnote

[5]     **Action**
        ←Nature and Subject Matter of Actions in General

District court should stay civil case pending resolution of related criminal proceeding only upon showing of special circumstances, to prevent defendant from suffering substantial and irreparable prejudice.

9 Cases that cite this headnote

[6]     **Action**
        ←Nature and Subject Matter of Actions in General

Factors in whether stay of civil action is warranted pending resolution of related criminal proceeding are: (1) extent to which issues in criminal case overlap with those presented in civil case; (2) status of criminal case, including whether defendant has been indicted; (3) private interests of plaintiff in proceeding expeditiously, weighed against prejudice to plaintiff caused by delay; (4) private interests of and burden on defendant; (5) interests of courts; and (6) public interest.

18 Cases that cite this headnote

[7]     **Action**
        ←Nature and Subject Matter of Actions in General

To warrant complete stay of civil action pending resolution of parallel criminal proceeding, post-indictment, defendant must make strong showing that two proceedings will so overlap that either: (1) he cannot protect himself in civil proceeding by selectively invoking his Fifth Amendment privilege, or (2) effective defense of both cases is impossible. U.S.C.A. Const.Amend. 5.

5 Cases that cite this headnote

[8]     **Action**
        ←Nature and Subject Matter of Actions in General

In § 1983 action against county tax assessor and against official within assessor's office, alleging that office's former employees had been required to participate in assessor's political campaigns and in raffles benefiting assessor, assessor's and official's interests weighed against grant of complete stay pending resolution of state criminal case against official for gambling promotion; cases did not significantly overlap since alleged wrong in civil case was mandating of employee participation and retaliation, not taking/holding of raffle ticket money, state was not party to civil action, and neither defendant would be burdened in civil suit through selective invocation of right against self-incrimination. U.S.C.A. Const.Amend. 5; 42 U.S.C.A. § 1983; V.T.C.A., Penal Code §§ 47.03(a)(3), 71.02(a)(2).

Cases that cite this headnote

[9]     **Action**
        ←Nature and Subject Matter of Actions in General

In § 1983 action against county tax assessor and against official within assessor's office, alleging that office's former employees had been required to participate in assessor's political campaigns and in raffles benefiting assessor, former employees' interests weighed against

**APPENDIX 35**

grant of complete stay pending resolution of state criminal case against official for gambling promotion; most evidence in civil case would consist of witness testimony couched in memory, and integrity of such testimony was in danger of degrading further in event of stay of uncertain duration. 42 U.S.C.A. § 1983; V.T.C.A., Penal Code §§ 47.03(a)(3), 71.02(a)(2).

1 Cases that cite this headnote

[10] **Action**
⟜Nature and Subject Matter of Actions in General

In § 1983 action against county tax assessor and against official within assessor's office, alleging that office's former employees had been required to participate in assessor's political campaigns and in raffles benefiting assessor, federal district court's interests weighed against grant of complete stay pending resolution of state criminal case against official for gambling promotion; there was no significant overlap between cases, and district court was unlikely to expend significant effort on claims of privilege against self-incrimination given defendants' admissions as to existence of raffles. U.S.C.A. Const.Amend. 5; 42 U.S.C.A. § 1983; V.T.C.A., Penal Code §§ 47.03(a)(3), 71.02(a)(2).

2 Cases that cite this headnote

[11] **Action**
⟜Nature and Subject Matter of Actions in General

In § 1983 action against county tax assessor and against official within assessor's office, alleging that office's former employees had been required to participate in assessor's political campaigns and in raffles benefiting assessor, interests of public and third parties weighed against grant of complete stay pending resolution of state criminal case against official for gambling promotion; public had interest in

resolving case with minimal delay, there was no significant overlap between cases and thus no demonstrated risk to defendants' rights, and current employees as well as county also had interest in prompt resolution. 42 U.S.C.A. § 1983; V.T.C.A., Penal Code §§ 47.03(a)(3), 71.02(a)(2).

3 Cases that cite this headnote

[12] **Action**
⟜Nature and Subject Matter of Actions in General

Indictment of county tax assessor in state court for organized gambling promotion, in connection with raffles in county assessor's office that benefited assessor's election campaigns and that former employees were allegedly forced to participate in, did not warrant complete stay of employees' § 1983 action against county tax assessor and official within her office arising out of forced participation in raffles, although there was some overlap between the prosecution and the civil action; 60-day stay of discovery in § 1983 action was sufficient to permit assessor to understand criminal charges against her and respond appropriately to civil suit, plaintiffs in § 1983 action would be prejudiced by complete stay, as they had already waited eight months to begin discovery, and public had interest in timely resolution of dispute. 42 U.S.C.A. § 1983; V.T.C.A., Penal Code § 71.02(a)(2).

Cases that cite this headnote

**Attorneys and Law Firms**

**\*393** Albert M. Gutierrez, III, Matthew Fisher Wymer, Gutierrez Wymer, P.C., San Antonio, TX, for Plaintiffs.

Kyle Cledys Watson, Goode Casseb et al., Albert Lopez, Attorney at Law, San Antonio, TX, Juan Ramon Flores, Murray Edward Malakoff, Yohana Saucedo, Attorney at Law, Alberto J. Alarcon, Hall Quintanilla & Alarcon, Laredo, TX, for Defendants.

**APPENDIX 36**

statement: "Patricia Barrera, Webb County Tax–Assessor–Collector, *not printed at taxpayer expense*." (Dkt. No. 12 at ¶ 29) (emphasis in original).

*MEMORANDUM OPINION AND ORDER*

J. SCOTT HACKER, United States Magistrate Judge.

Pending before the Court is Defendants Mary Ethel Novoa and Patricia Barrera's "Motion to Stay Civil Proceedings in this Case" (Dkt. Nos. 45, 56). Defendants move the Court to issue a complete stay of this civil action until the conclusion of Novoa's pending state court trial. Plaintiffs have filed a response to Defendants' Motion and are opposed to a stay. (Dkt. No. 46). After having considered the parties' arguments and the applicable case law, the Court holds that a complete stay of these civil proceedings is unwarranted. However, the Court will GRANT a limited stay to continue as to Defendant Novoa only until May 24, 2009. As such, and as detailed below, Defendants' Motion (Dkt. Nos. 45, 56) is DENIED in part and GRANTED in part.

*Background*

In January of 1993, Barrera took elected office as Webb County Tax Assessor/Collector and currently serves Webb County in that capacity. (Dkt. No. 12 at ¶ 18). Defendants Novoa, Rosa Hernandez, and Dora Jimenez are supervisors for the Webb County Tax Assessor/Collector's Office (the "WCTAC"). (*Id.* at ¶¶ 13–15). Each of the ten Plaintiffs, at one time or another, was an employee with the WCTAC, but either resigned or was terminated.

According to Plaintiffs, beginning in 1994, the WCTAC began to hold a series of raffles sanctioned by Barrera. (*Id.* at ¶¶ 19, 21). Allegedly, the "Employee Fund Raffle" became an annual event used to raise money for the WCTAC Christmas party. (*Id.* at ¶ 19). Plaintiffs also assert that, by 1996, a separate raffle, the "*Rifa Entre Amigos* " (or the "Raffle Among Friends"), was being held at the WCTAC three times a year. (*Id.* at ¶¶ 21–22). Plaintiffs claim that this particular raffle was for the benefit of Barrera, as the money derived there from was used, in part, to fund Barrera's re-election campaigns *394 and to pay for calendars bearing Barrera's name and title, which were given away annually to WCTAC patrons.[1] (*Id.* at ¶ 29).

---

[1]     Apparently, these calendars contained the following

All WCTAC employees, including Plaintiffs, were allegedly recruited by Defendants to sell a specific number of raffle booklets for each raffle. (*Id.* at ¶¶ 22, 25–28). Plaintiffs assert that participation in the selling of tickets was mandatory and a condition of employment with the WCTAC. (*Id.* at ¶¶ 25, 27). Raffle tickets were purportedly sold openly at the WCTAC during regular business hours. (*Id.* at ¶¶ 20, 30). According to Plaintiffs, WCTAC employees who were issued tickets were required to sell those tickets, both during work hours and non-work hours, to both WCTAC patrons and to their own family members. (*See id.* at ¶ 20). Allegedly, employees themselves had to purchase any tickets that were issued to them but remained unsold by the raffle deadlines. (*Id.* at ¶¶ 27–28). Plaintiffs aver that Defendants "enforced participation in the raffles by verbal threats, intimidation and open hostility, including, but not limited to, the threat of termination, the threat that terminated employees would be black-balled from other government and non-government jobs, or other unspecified retaliation." (*Id.* at ¶ 23). The money WCTAC employees collected from the sale of raffle tickets was allegedly paid directly to Barrera or one of the Defendant-supervisors. (*Id.* at ¶ 34). Plaintiffs also claim that drawings for these raffles occurred openly at the WCTAC. (*Id.* at ¶ 35).

Apart from these raffles, Plaintiffs assert that in 2000, Defendants began mandating WCTAC employee participation in football pots (or betting pools). (*Id.* at ¶ 36). Supposedly, these pots centered on the outcomes of football games like the Dallas Cowboys' annual Thanksgiving Day game and the Super Bowl. (*Id.*). Plaintiffs allege that each square (or stake in the pot) cost twenty dollars, and that each WCTAC employee was required, as a condition of employment, to either purchase one square for him or herself, or to sell two squares. (*Id.* at ¶¶ 37, 40). Like participation in the raffles, Defendants purportedly enforced participation in these football pots through threats of termination and retaliation. (*Id.* at ¶ 39).

Mandating participation in these raffles and football pots is not the only objectionable activity alleged by Plaintiffs against Defendants. Plaintiffs claim that mandatory re-election campaigning on behalf of Barrera was another condition of employment at the WCTAC. (*Id.* at ¶¶ 70–82). According to Plaintiffs, Barrera required that WCTAC employees place Barrera campaign bumper stickers on their cars, maintain a Barrera campaign sign

APPENDIX 37

outside their homes, and volunteer at Barrera campaign headquarters. (*Id.* at ¶¶ 71, 73, 75). These activities were supposedly enforced, in part, by threats of termination for failure to comply. Several Plaintiffs claim that they were indeed fired for refusing to engage in campaign activity for Barrera. (*Id.* at ¶¶ 71, 76–77).

After whistle-blowing by then and former WCTAC employees, including by two of the Plaintiffs, the Attorney General of the State of Texas began to investigate the activities at the WCTAC. (*Id.* at ¶¶ 43, 53). On October 11, 2007, pursuant to a search warrant, the Attorney General's office conducted a raid of the WCTAC, which resulted in the seizure of evidence. (*Id.* at ¶¶ 44–45; Dkt. No. 45, Ex. B). In *395 the following months, investigators with the Attorney General conducted interviews of WCTAC employees, and some employees were subpoenaed to testify before a Grand Jury. (Dkt. No. 1 at ¶¶ 48, 59, 66). Plaintiffs allege that WCTAC employees were threatened with retaliation by Barrera and the Defendant-supervisors if they spoke to investigators. (*Id.* at ¶¶ 49–52, 54–57). Those employees, including one Plaintiff, who testified or were suspected of testifying before the Grand Jury, were purportedly terminated. (*Id.* at ¶¶ 67–68).

By early September of 2008, the last of all the above-captioned Plaintiffs had either resigned or had been terminated from the WCTAC. On September 24, 2008, Plaintiffs filed the instant federal civil action against Webb County, Texas, Barrera (in her individual and official capacities), and the Defendant-supervisors, Novoa, Hernandez, and Jimenez (also in their respective individual and official capacities). (Dkt. No. 1). Plaintiffs bring suit, *inter alia,* pursuant to 42 U.S.C. § 1983, alleging civil rights violations under the First and Fourteenth Amendments of the United States Constitution. (Dkt. No. 12 at ¶ 155). Plaintiffs also allege that Defendants violated various state law offenses.

The same day Plaintiffs filed their lawsuit, Defendant Novoa was indicted in Webb County on state charges of gambling promotion[2] and engaging in organized criminal activity.[3] (Dkt. No. 45, Ex. C). The indictment charges that Novoa:

---

[2] More specifically, Novoa is charged with a violation of Texas Penal Code § 47.03(a)(3), which provides that "[a] person commits an offense if he intentionally or knowingly ... for gain, becomes a custodian of anything of value bet or offered to be bet ...." An offense under § 47.03 is a Class A misdemeanor. TEXAS Penal Code § 47.03(b).

[3] This involves a violation of Texas Penal Code § 71.02(a)(2), which provides that "[a] person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit ... any gambling offense punishable as a Class A misdemeanor ...." Because Novoa is also charged with engaging in organized criminal activity, the offense of gambling promotion becomes a state jail felony. Texas Penal Code § 71.02(b). A Texas state jail felony is punishable, in part, by "confinement in a state jail for any term of not more than two years or less than 180 days" and a fine of not more than $10,000. TEXAS PENAL CODE § 12.35(a), (b).

---

... did unlawfully with intent to establish, maintain, and participate in a combination and in the profits of a combination, said combination consisting of defendant and two or more other persons, commit the Class A misdemeanor offense of Gambling Promotion, and in furtherance of said combination, DEFENDANT, on or about and between May 24, 2006 and May 24, 2007 pursuant to one scheme and continuing course of conduct, did then and there intentionally and knowingly for gain become the custodian of a thing of value bet or offered to be bet, to-wit: money for raffle tickets.

(*Id.*). While Novoa is accused of acting with two or more other persons, she is currently the only defendant in this case who has been indicted.

Eventually, Barrera, Novoa, and the other Defendant-supervisors all filed separate answers to Plaintiffs' complaint. With respect to Plaintiffs' claims regarding raffles at the WCTAC, in her answer, Novoa generally admits that raffles, sanctioned by Barrera, took place. (Dkt. No. 28 at ¶¶ 4, 6–7, 9). She also admits that it was known to WCTAC employees that some of the money collected from the "Raffle Among Friends" was used for Barrera's campaigns and for "giveaways" to *396 patrons of the WCTAC. (*Id.* at ¶ 12). However, Novoa denies that these raffles constituted "gambling" and that any participation by WCTAC employees was mandatory. (*Id.* at ¶¶ 4, 9). She also denies that raffle ticket money collected by the WCTAC employees was paid directly to her. (*Id.* at ¶ 13).

In the case of Barrera, she too admits that raffles occurred amongst the WCTAC employees. (Dkt. No. 36 at ¶ 7). Barrera also admits that she would, on occasion, conduct ceremonial drawings for the "Raffle Among Friends," and that part of the monies collected from that raffle "were utilized to pay for calendars and materials which were

**APPENDIX 38**

considered to be promotional in nature." (*Id.* at ¶ 9). However, Barrera denies that mandatory gambling was a condition of employment at the WCTAC. (*Id.* at ¶ 6). Barrera also denies that raffle ticket money collected by the WCTAC employees was paid directly to her. (*Id.* at ¶ 8).

Hernandez and Jimenez deny that raffles ever took place at the WCTAC. (Dkt. No. 30 at ¶ 5; No. 34 at ¶ 2). Jimenez also objects to Plaintiffs' framing of this activity as "gambling" and "sanctioned." (Dkt. No. 34 at ¶ 2). As to most of the rest of Plaintiffs' claims, Jimenez has invoked her privilege against self-incrimination due to the Texas Attorney General's ongoing criminal investigation into the WCTAC. (*Id.* at ¶ 5). Jimenez is the only defendant to have invoked her Fifth Amendment rights thus far.

On January 22, 2009, Novoa and Barrera filed this motion requesting that the Court stay the civil proceedings in this case pending completion of the ongoing state criminal action against Novoa. (Dkt. No. 45 at ¶ 3). None of the other Defendants joined in this motion, nor did they file a separate request for a stay. Plaintiffs filed their response in opposition to the stay on January 26, 2009. (Dkt. No. 46).

## Discussion

### I. Legal Standard

[1] [2] It is not altogether uncommon that a defendant will find himself or herself facing separate civil and criminal prosecutions stemming from the same transaction or occurrence. For instance, this occurs quite often in the securities field, where parallel actions may be brought at the same time by different agencies of the federal government. However, the Supreme Court has established that there exists no general constitutional, statutory, or common law prohibition against the prosecution of parallel criminal and civil actions, even where such actions proceed simultaneously. *SEC v. First Fin. Group of Texas, Inc.,* 659 F.2d 660, 666-67 (5th Cir.1981) (citing *United States v. Kordel,* 397 U.S. 1, 11, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)). Thus, whether to stay a civil action pending resolution of a parallel criminal prosecution is not a matter of constitutional right, but, rather, one of court discretion, that should be exercised when the interests of justice so require. *Kordel,* 397 U.S. at 12 n. 27, 90 S.Ct. 763; *Dominguez v. Hartford Fin. Servs. Group, Inc.,* 530 F.Supp.2d 902, 905 (S.D.Tex.2008). A district court's discretionary authority

to stay proceedings stems from its inherent authority to control the disposition of the cases on its own docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). These same principles apply where, as in the present case, a state criminal prosecution and a federal civil action are involved. *See, e.g., St. Martin v. Jones,* 2008 WL 4534398 (E.D.La. Oct. 2, 2008); *Agueros v. Vargas,* 2008 WL 2937972 (W.D.Tex. July 21, 2008).

*397 There are several reasons why a court may wish to exercise its discretion and stay a parallel civil case. One primary goal of a stay, when a stay is indeed warranted, is to preserve a defendant's Fifth Amendment right against self-incrimination and to resolve the conflict he would face between asserting this right and defending the civil action. *See SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1376 (D.C.Cir.1980) (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.,* 886 F.Supp. 1134, 1138(S.D.N.Y.1995); *see also Heller Healthcare Fin., Inc. v. Boyes,* 2002 WL 1558337, at *3 (N.D.Tex. July 15, 2002). Furthermore, a stay may be justified in order to prevent extending criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), exposing the defense's theory to the prosecution in advance of trial, or otherwise prejudicing the criminal case. *Dresser,* 628 F.2d at 1376; *Plumbers and Pipefitters,* 886 F.Supp. at 1138. The Fifth Circuit has advised that when handling a motion to stay a civil case, a court should be sensitive to the differences between the civil and criminal rules of discovery, noting that "[w]hile the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive." *Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir.1962). Given these differences:

> Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed—unstayed. In the proper case the trial judge should use his discretion to narrow the range of discovery.

**APPENDIX 39**

*Id.* (internal citation omitted).

[3] Regardless, "[i]t 'is the rule, rather than the exception' that civil and criminal cases proceed together." *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.,* 571 F.Supp.2d 758, 761 (W.D.Tex.2008) (quoting *IBM v. Brown,* 857 F.Supp. 1384, 1387 (C.D.Cal.1994)). And the complete stay of a pending civil action until the conclusion of a related criminal proceeding is considered to be an "extraordinary remedy." *In re Piperi,* 137 B.R. 644, 646–47 (Bankr.S.D.Tex.1991) (citing *Weil v. Markowitz,* 829 F.2d 166, 174 (D.C.Cir.1987)); *see also Plumbers and Pipefitters,* 886 F.Supp. at 1139. One reason for this is that a complete stay is tantamount to a defendant's "blanket assertion" of the Fifth Amendment, which is itself improper. *SEC v. Incendy,* 936 F.Supp. 952, 957 (S.D.Fla.1996); *see United States v. Little Al,* 712 F.2d 133, 134–136 (5th Cir.1983); *see also First Financial,* 659 F.2d at 668–69; *see also United States v. Goodwin,* 625 F.2d 693, 701 (5th Cir.1980). Generally, a party is required to selectively invoke the privilege against self-incrimination and object with specificity to the information sought from him. *First Financial,* 659 F.2d at 668. This allows a district court to conduct a particularized inquiry, deciding in connection with each specific area that the questioning party seeks to explore, whether or not the privilege is well-founded. *Id.* (quoting *United States v. Melchor Moreno,* 536 F.2d 1042, 1049 (5th Cir.1976)) (quotation marks omitted). Whether a party is entitled to the protection of the privilege is for the court to decide, not the invoking party. *Id.*

[4] [5] As far as the civil case is concerned, there is a strong presumption in favor of discovery, and it is the party who *398 moves for a stay that bears the burden of overcoming this presumption. *Fresenius Medical,* 571 F.Supp.2d at 761 (citing *United States v. Gieger Transfer Serv., Inc.,* 174 F.R.D. 382, 385 (S.D.Miss.1997)). A district court should stay the civil case only upon a showing of "special circumstances," so as to prevent the defendant from suffering substantial and irreparable prejudice. *First Financial,* 659 F.2d at 668 (citing *Kordel,* 397 U.S. at 11–13, 90 S.Ct. 763); *Dresser,* 628 F.2d at 1377.

In determining whether "special circumstances" warrant a stay, a court must measure the relative weights of competing constitutional and procedural interests. *See First Financial,* 659 F.2d at 668; *see also Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1088 (5th Cir.1979); *see also LeBouef v. Global X–Ray,* 2008 WL 239752, at *2 (E.D.La. Jan. 29, 2008). Those interests were articulated by District Judge Louis H. Pollak and Magistrate Judge William F. Hall, Jr. in *Golden Quality*

*Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.,* 87 F.R.D. 53 (E.D.Pa.1980). In *Golden Quality,* the court held that whether to stay a civil action by reason of a pending criminal action involved a balancing of the following interests: (1) the plaintiff's interest in proceeding expeditiously in the civil case, balanced against the potential prejudice to the plaintiff caused by a delay; (2) the defendant's interest and the burden which any particular aspect of the proceedings may impose on him; (3) the court's interest in the management of its cases and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the public's interest in the pending civil and criminal litigation. *Golden Quality,* 87 F.R.D. at 56. Over time, this test has been adopted by other courts and has evolved—some factors have been dropped and others added. *Compare Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.,* 87 F.R.D. 53, 56 (E.D.Pa.1980), *with Arden Way Assocs. v. Boesky,* 660 F.Supp. 1494, 1497–98 (S.D.N.Y.1987) (citing *Golden Quality,* 87 F.R.D. at 56), *with Volmar Distribs., Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36, 39 (S.D.N.Y.1993) (citing *Arden Way,* 660 F.Supp. at 1497–98), *with Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.,* 886 F.Supp. 1134, 1139 (S.D.N.Y.1995) (citing *Volmar Distribs.,* 152 F.R.D. at 39; *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201 (Pollack, J.)), *with Heller Healthcare Fin., Inc. v. Boyes,* 2002 WL 1558337, at *2 (N.D.Tex. July 15, 2002) (citing *Plumbers and Pipefitters,* 886 F.Supp. at 1139).

[6] The test (or a variation thereof) that is generally used today was first articulated by District Judge Denny Chin in *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.,* 886 F.Supp. 1134 (S.D.N.Y.1995). In *Plumbers and Pipefitters,* the court modified the traditional "balancing of the interests" test developed by the *Golden Quality* court by weighing two additional factors as part of the analysis: the extent to which the issues in the criminal case overlap with those presented in the civil case; and the status of the criminal case, including whether the defendants have been indicted.[4] *Id.* at 1139. District courts in the Fifth Circuit who apply the *Plumbers and Pipefitters* test consider or weigh the six following factors: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the *399 status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest. *See, e.g., St. Martin v.*

**APPENDIX 40**

*Jones,* 2008 WL 4534398, at *1 (E.D.La. Oct. 2, 2008); *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.,* 571 F.Supp.2d 758, 762 (W.D.Tex.2008); *Agueros v. Vargas,* 2008 WL 2937972, at *1 (W.D.Tex. July 21, 2008); *Akuna Matata Invs., Ltd. v. Texas Nom Ltd. P'ship,* 2008 WL 2781198, at *2 (W.D.Tex. April 14, 2008); *SEC v. Offill,* 2008 WL 958072, at *2 (N.D.Tex. Apr. 9, 2008); *United States v. Simcho,* 2008 WL 2053953, at *3 (N.D.Tex. Mar. 31, 2008); *SEC v. AmeriFirst Funding, Inc.,* 2008 WL 866065, at *2 (N.D.Tex. Mar. 17, 2008); *LeBouef v. Global X–Ray,* 2008 WL 239752, at *1 (E.D.La. Jan. 29, 2008); *Dominguez v. Hartford Fin. Servs. Group, Inc.,* 530 F.Supp.2d 902, 905 (S.D.Tex.2008); *Whitney Nat'l Bank v. Air Ambulance ex rel. B & C Flight Mgmt., Inc.,* 2007 WL 1468417, at *2 (S.D.Tex. May 18, 2007); *Shaw v. Hardberger,* 2007 WL 1465850, at *2 (W.D.Tex. May 16, 2007); *Holden Roofing, Inc. v. All States Roofing, Inc.,* 2007 WL 1173634, at *1 (S.D.Tex. Apr. 18, 2007); *State Farm Lloyds v. Wood,* 2006 WL 3691115, at *1 (S.D.Tex. Dec. 12, 2006); *Lewis v. City of Garland,* 2005 WL 2647956, at *2 (N.D.Tex. Oct. 14, 2005); *SEC v. Mutuals.com, Inc.,* 2004 WL 1629929, at *3 (N.D.Tex. July 20, 2004); *Frierson v. City of Terrell,* 2003 WL 22479217, at *2 (N.D.Tex. Aug. 4, 2003); *Librado v. M.S. Carriers, Inc.,* 2002 WL 31495988, at *1 (N.D.Tex. Nov. 5, 2002); *Heller Healthcare Fin., Inc. v. Boyes,* 2002 WL 1558337, at *2 (N.D.Tex. July 15, 2002).[5] Although not usually considered by district courts in the Fifth Circuit, another important factor articulated by the *Golden Quality* court involves balancing the interests of persons not parties to the civil litigation.

[4] The *Plumbers and Pipefitters* court also dropped one factor, the interests of persons not party to the civil litigation, because it was deemed inapplicable by the court and had not been raised by the parties. *Plumbers and Pipefitters,* 886 F.Supp. at 1139 n. 7.

[5] *Plumbers and Pipefitters* is the genesis of this test. All the cases cited here either cite *Plumbers and Pipefitters* directly, or cite a case that cites *Plumbers and Pipefitters.*

The Court agrees that all of these factors are important in determining whether the stay of a civil case should be granted. However, the Court believes that the two additional factors articulated in *Plumbers and Pipefitters*—namely, the overlap between the civil and criminal cases and the status of the criminal case—are not *independent* factors for the Court to consider. Rather, they are factors important in determining how the interests of the parties, the Court, third parties, and the public will be weighed against each other.[6] In other ***400** words, because factors like overlap and the status of the criminal case may substantially impact the interests of the parties, the Court, third parties, and the public, these two factors should be analyzed within the framework of those interests. "This balancing-of-the-interests approach ensures that the rights of both [the defendant and the plaintiff] are taken into consideration before the court decides whose rights predominate." *Wehling,* 608 F.2d at 1088.

[6] The Court is well aware that its own understanding of this six-factor test may differ slightly from that of other district courts. However, the Court views as problematic the balancing of concepts like "overlap of issues" and "status of the criminal case," with concepts like "defendant's interests," "plaintiffs' interests," and the Court's own interests in this matter. In *Golden Quality,* this test was originally viewed as a balancing of competing interests. Whether there is significant overlap of the issues between the civil and criminal case is an important aspect of the analysis—maybe, even, the most important. But only because it and the "status of the criminal case" will affect how much weight to accord to the competing interests and how those interests are ultimately balanced against each other. Simply stated, the overlap of the criminal and civil cases is not something to "balance," *per se,* but, rather, something to consider in determining how the balancing of the various interests in a case will play out. Regardless, while the Court's analysis of this test may be different, its application should yield the same result. Arguably, the Court's understanding of this test aligns more closely with the test applied by the Ninth Circuit Court of Appeals, whose test derives directly from the source—the *Golden Quality* case. See *Federal Sav. and Loan Ins. Corp. v. Molinaro,* 889 F.2d 899 (9th Cir.1989) (citing *Golden Quality,* 87 F.R.D. at 56); *see also Keating v. Office of Thrift Supervision,* 45 F.3d 322 (9th Cir.1995) (citing *Molinaro,* 889 F.2d at 902–03); *see also Lizarraga v. City of Nogales Arizona,* 2007 WL 215616 (D.Ariz. Jan. 24, 2007) (citing *Keating,* 45 F.3d at 324–25).

## II. Analysis

After having balanced the above-referenced competing interests and how overlap and the status of the criminal case impacts those interests, the Court holds that a complete stay of these proceedings is not warranted.

### A. The Balancing of Interests

**APPENDIX 41**

## 1. Defendants' Interest

In deciding whether to issue the stay, the Court first considers the interests of the moving defendants.[7] As previously stated, the Court evaluates those interests primarily by analyzing how overlap and the status of the criminal case may affect those defendants.

[7] Because neither Jimenez nor Hernandez seeks to stay this case, the Court will not address the propriety of according such relief as to these particular defendants.

Overlap can be particularly important to a defendant's interests.[8] For example, a defendant has an interest in preventing a parallel civil action from prejudicing his criminal defense. As noted above, if a court does not stay a parallel civil action, then the civil case might undermine the defendant's Fifth Amendment privilege against self-incrimination by expanding rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), by exposing the basis of the defense to the prosecution in advance of criminal trial, or by prejudicing the criminal case through other means. *See Dresser,* 628 F.2d at 1376. Simply stated, a defendant may be burdened by liberal civil discovery on the same issues as those in the pending criminal case, where discovery would be otherwise limited. *See Whitney,* 2007 WL 1468417, at *3; *see also Campbell,* 307 F.2d at 487; *see also Dresser,* 628 F.2d at 1376.

[8] It is said that self-incrimination is more likely to occur the more significant the overlap. *See Plumbers and Pipefitters,* 886 F.Supp. at 1139. Whether there is overlap between the issues in a criminal and civil action "demands a common-sense, fact-bound analysis." *Fresenius Medical,* 571 F.Supp.2d at 762 (citing *In re Ramu Corp.,* 903 F.2d 312, 320 (5th Cir.1990)). A court must read the criminal indictment and the civil complaint side-by-side and determine whether the *wrongful conduct* alleged in both cases is similar. *Plumbers and Pipefitters,* 886 F.Supp. at 1139. Courts caution, however, that "a mere relationship between civil and criminal proceedings and the prospect that discovery in the civil case could prejudice the criminal proceeding does not necessarily warrant a stay." *Fresenius Medical,* 571 F.Supp.2d at 762 (citing *In re Ramu Corp.,* 903 F.2d 312, 320 (5th Cir.1990)).

A defendant also has an interest in avoiding the quandary of choosing between waiving his Fifth Amendment rights and effectively forfeiting the civil case. *Plumbers and Pipefitters,* 886 F.Supp. at 1140. A defendant is more likely to face this quandary where the subject matter of *401 both cases overlaps to a significant degree. *Id.* at

1139 (citing *Parallel Proceedings,* 129 F.R.D. at 203) ("If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay."). As such, a court should consider whether, by allowing the civil case to continue, the defendant can effectively defend the civil lawsuit without being pressured into waiving his Fifth Amendment rights.

Furthermore, the status of the criminal case is important in evaluating a defendant's interest in obtaining a stay in the civil proceedings. In fact, status of the criminal case is pivotal to determining the degree of overlap. Analysis centers upon whether the criminal case is pre-indictment in the investigation stage or post-indictment with a set trial date.

Prior to an indictment, whether the issues will even overlap is a mere "matter of speculation." *United States ex rel. Shank v. Lewis Enters., Inc.,* 2006 WL 1064072, at *4 (S.D.Ill. Apr. 21, 2006); *see Square D Co. v. Showmen Supplies, Inc.,* 2007 WL 1430723, at *4 (N.D.Ind. May 14, 2007). Accordingly, courts generally decline to impose a stay where the defendant is under criminal investigation, but has yet to be indicted. *In re CFS,* 256 F.Supp.2d 1227, 1237 (N.D.Okla.2003) (citing *Sterling Nat. Bank v. A–1 Hotels Int'l, Inc.,* 175 F.Supp.2d 573, 576 (S.D.N.Y.2001)); *Fresenius Medical,* 571 F.Supp.2d at 763 (citing *Shank,* 2006 WL 1064072, at *3). Indeed, a "pre-indictment motion to stay can be denied on this ground alone." *Citibank, N.A. v. Hakim,* 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993).

[7] Post-indictment is when the degree of overlap between a criminal and civil case can most readily be determined. *Fresenius Medical,* 571 F.Supp.2d at 762. The criminal indictment helps clarify the alleged conduct at issue and can be easily compared against the civil complaint. As such, "[t]he 'strongest case' for a stay exists where a party is indicted for a serious offense and must defend a civil action involving the same matter."[9] *Lizarraga v. City of Nogales Arizona,* 2007 WL 215616, at *3 (D.Arizona, January 24, 2007) (citing *Dresser,* 628 F.2d at 1377). It is important to note, however, that even after an indictment has issued, courts are generally split as to the propriety of granting a stay. *In re CFS,* 256 F.Supp.2d at 1238; *see In re Worldcom, Inc. Sec. Litig.,* 2002 WL 31729501, at *4 (S.D.N.Y. Dec. 5, 2002). In summary, to warrant a stay, a defendant must make a strong showing that the two proceedings will so overlap that either (1) he cannot protect himself in the civil proceeding by selectively invoking his Fifth Amendment privilege, or (2) effective defense of both [the criminal and civil cases] is impossible. *Koester v. American Republic Investments, Inc.,* 11 F.3d 818, 823 (8th Cir.1993).

APPENDIX 42

A stay is even more appropriate when the federal government has initiated both the civil and criminal proceedings. *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y.1985); *see Square D Co. v. Showmen Supplies, Inc.*, 2007 WL 1430723, at *4 (N.D.Ind. May 14, 2007); *see also Sterling Nat. Bank v. A–1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 578–79 (S.D.N.Y.2001). Again, this is quite common in the field of securities regulation. There is likely to be complete overlap between a civil suit by the SEC and a parallel criminal prosecution by the DOJ.

### a. Novoa

[8] In the case of defendant Novoa, an indictment has been issued, and it is possible to pinpoint the issues at stake with some certainty. At first glance, there does appear to be some degree of overlap between Novoa's criminal prosecution in state court and the instant federal civil action. Novoa is being prosecuted for organized *402 gambling promotion. This allegedly involved Novoa becoming, for gain, the custodian of a thing of value bet or offered to be bet—specifically, money for raffle tickets. In terms of the civil action, Plaintiffs claim, in part, that they were wrongfully required as a condition of employment at the WCTAC to participate in this organized scheme whereby Novoa became the custodian of the thing of value, or the money for the raffle tickets. Furthermore, Plaintiffs claim that they were then retaliated against for cooperating with the Attorney General's investigation into this supposed scheme. Overlap between the two cases would occur, then, with respect to any facts related to Novoa's supposed collection of raffle-ticket money from WCTAC employees.

However, a closer comparison of the criminal indictment and the civil complaint reveals that the wrongful conduct alleged in the civil case is at least one step removed from the wrongful conduct alleged in the criminal case. Whereas in the criminal case, the alleged wrongful conduct centers around the taking and holding of raffle ticket money, the alleged wrongful conduct in the civil case centers around whether WCTAC employment was conditioned on the raising of money through the raffle and the participation in various campaign activities. Liability in the civil case is also based upon an even more tangentially related scenario: whether WCTAC employees were retaliated against for cooperating in an investigation regarding whether employment at the

WCTAC was conditioned on the raising of money through the raffle and the participation in various campaign activities. The differences between the wrongful conduct alleged in the civil and criminal cases demonstrates a lack of significant overlap between the two.

The degree of overlap is further reduced by the fact that the prosecutor in the criminal case, namely the State of Texas, is not a party to the civil action. In fact, the potential for prejudice to a criminal defense is diminished where private parties, and not the government, are the plaintiffs in the civil action. *Hakim*, 1993 WL 481335, at *2. Quite possibly the strongest case for a stay occurs when the federal government has initiated both the civil and criminal proceedings. *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y.1985); *see Square D Co. v. Showmen Supplies, Inc.*, 2007 WL 1430723, at *4 (N.D.Ind. May 14, 2007); *see also Sterling Nat. Bank v. A–1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 578–79 (S.D.N.Y.2001). "In such circumstances, there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means." *Sterling*, 175 F.Supp.2d at 579; *see Square D*, 2007 WL 1430723, at *4 (citing *United States ex rel Shank v. Lewis Enters., Inc.*, 2006 WL 1064072, at *4 (S.D.Ill. Apr. 21, 2006)) ("The court's concern is the risk of the government's use of the broad scope of civil discovery to obtain information for use in the criminal prosecution."); *see also Campbell*, 307 F.2d at 487. Arguably, the risks to a defendant's constitutional rights are magnified in such a situation. *Sterling*, 175 F.Supp.2d at 579. However, the instant civil case has been brought by private entities and is not one "in which the government itself has an opportunity to escalate the pressure on defendants by manipulating simultaneous civil and criminal proceedings, both of which it controls." *Id.* The private plaintiffs here have interests distinct from those of the Texas government, and "[t]here is no reason to assume that [Plaintiffs'] civil case is simply a stalking horse for the government's criminal inquiry, rather than a good faith effort *403 to obtain compensation for [their] own private injuries." *Id.*

Because there is no significant overlap between the civil and criminal cases, little concern is raised regarding Novoa's Fifth Amendment rights and her ability to defend the civil and criminal actions. First in terms of the civil case, if Novoa is indeed asked during discovery whether any raffles took place at the WCTAC, or whether she collected any raffle monies, she can admit or deny this, or invoke her Fifth Amendment right not to incriminate herself. Selective invocation of the Fifth Amendment as

APPENDIX 43

to such a question would not burden her civil defense. Whether these raffles occurred at the WCTAC, or whether Novoa was the custodian of the raffle monies, is not the wrongful conduct alleged by Plaintiffs. Instead, Plaintiffs would have to prove, in part, for purposes of the civil suit, that Novoa furthered the policy of mandatory participation in these raffles. And even if Novoa were indeed asked whether this was the case, her civil defense would not be unduly burdened through her selective invocation of the Fifth Amendment in response. If the evidence in this case simply consisted of one party's word against the other's, the defendant's invocation of the Fifth Amendment privilege would have the potential to hamper the civil defense. But here, there are literally dozens of witnesses, current and former WCTAC employees, who have seen and experienced what occurred at the WCTAC. (Dkt. No. 45, Exhibit A, Initial Disclosures). As such, if she were to selectively invoke the Fifth Amendment, Novoa's hands will not be tied because there may be any number of witnesses willing to testify on her behalf and support any claims she may make in defense of her suit.

Regardless, there seems to be little reason to believe that Novoa would selectively invoke her Fifth Amendment privilege against self-incrimination as to any questions whatsoever. In her answer to Plaintiffs' complaint, Novoa generally admits that raffles occurred at the WCTAC, and she denies any facts that would give rise to the true basis of liability in this civil action—whether participation in these raffles was mandatory and whether she furthered this policy through any number of means.[10] Simply put, Novoa has denied all of Plaintiffs' allegations as to retaliation or wrongful termination alleged by the former WCTAC employees. Therefore, there does not seem to be anything incriminating about Novoa testifying regarding the legitimate reasons as to why a former employee was terminated or denying any alleged instances of retaliation. In summary, Novoa has failed to show that she would be burdened in the civil suit through selective invocation of her Fifth Amendment right, or that it would be impossible to simultaneously defend the criminal and civil actions.

[10] Whether Novoa has already waived her Fifth Amendment privilege by even making these admissions and denials in her answer is a question not presently before the Court. Barrera also makes similar admissions and denials in her respective answer to Plaintiffs' complaint.

**b. Barrera**

As for Barrera, she has yet to be indicted. The degree of overlap is thus speculative at this point. *See Shank,* 2006 WL 1064072, at *3; *Square D Co.,* 2007 WL 1430723, at *4. Even assuming that Barrera were to be indicted as one of the individuals alleged to have acted in combination with Novoa, again, there would be no significant overlap of the issues. Furthermore, Barrera would not be burdened in the civil suit through selective invocation of her Fifth Amendment right. Like Novoa, *404 Barrera has the benefit of dozens of witnesses, current and former WCTAC employees, who have seen and experienced what occurred at the WCTAC. Therefore, Barrera cannot show that selective invocation of her Fifth Amendment right would significantly prejudice her civil case. Also, like Novoa, Barrera did not invoke her Fifth Amendment right in her answer. She too generally admits that raffles occurred at the WCTAC and denies that participation in these raffles was mandatory or that a lack of participation in the raffles and other campaign activities led to terminations. Therefore, Barrera, like Novoa, is able to testify that no retaliation occurred and that there were legitimate reasons for any terminations. Finally, Barrera is unable to show that the government is using the civil suit as a means of aiding its prosecution of a criminal action, both because the government is not a party to the civil suit and, in Barrera's case, because no criminal action has yet been initiated.

The Court does note that an investigating officer with the Texas Attorney General Office, Sergeant Alfonso Cavalier, executed an affidavit in support of the WCTAC search warrant, swearing, in part, that Barrera committed the following offense:

> Texas Penal Code, Chapter 39.02 Abuse of Official Capacity [by] allowing county employees to participate in football pots on county property during the course of their normal work day, by mandating that county employees sell raffle tickets during business hours while being paid by the county, by allowing the sale of these raffle tickets during business hours while being paid by the county, by allowing the sale of these raffle tickets in a county facility workplace, and personally profiting from the sale of these football pots and raffle tickets being sold by said county employees.[11]

[11] Section 39.02(a) of the Texas Penal Code provides that

**APPENDIX 44**

"a public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly: (1) violates a law relating to the public servant's office or employment; or (2) misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment." TEXAS PENAL CODE § 39.02(a).

(Dkt. No. 54, Ex. B at pg. 9). While an indictment based on this statement appears to overlap with the civil suit to a greater degree than the conduct alleged in Novoa's indictment, the Court points out that the search warrant was executed back in October 2007—about eighteen months ago. When the State of Texas initiated a prosecution approximately one year after the execution of that search warrant, it did not indict Barrera on the offense stated in the search warrant. Instead, it indicted Novoa on a separate offense, diminishing the likelihood that Barrera will be indicted based on the conduct stated in the affidavit. If Barrera is indicted and the conduct alleged in that indictment significantly overlaps with the conduct alleged in the civil suit, the Court will reevaluate whether a stay is warranted. At this time, however, the degree of overlap is too speculative to warrant a stay of Barrera's case.[12]

[12] The Court also notes that Barrera requests a stay until the conclusion of the criminal case against Novoa. But it is unclear to the Court how the conclusion of Novoa's case would impact Barrera, who has yet to be indicted and who could face prosecution even after Novoa's criminal case has concluded.

### 2. Plaintiffs' Interests

[9] Overlap, or the lack thereof, is also a concern for Plaintiffs' interests. Because *405 the Plaintiffs are not parties to the criminal case, a delay in their civil case could be prejudicial. When the government is a party to both the civil and criminal actions, a delay in the civil case may not be as significant. For the most part, the government is able to preserve its interests in the civil case through its prosecution of the criminal case. Such may not be the case when the plaintiffs, as they are here, are private parties.

While "[n]ormally, 'in evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right

to expeditiously pursue his claim,' " *Whitney*, 2007 WL 1468417, at *3 (citing *In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819, at *4 (E.D.Pa. May 13, 2003)), courts recognize that delay can lead to the loss of evidence and duly frustrate a plaintiff's ability to put on an effective case. *Fresenius Medical*, 571 F.Supp.2d at 763; *Sidari v. Orleans County*, 180 F.R.D. 226, 230 (W.D.N.Y.1997); *SEC v. Brown*, 2007 WL 4192000, at *2 (D.Minn. July 16, 2007); *Hakim*, 1993 WL 481335, at *2. With the passage of time, witnesses become unavailable, memories of conversations and dates fade, and documents can be lost or destroyed. *Brown*, 2007 WL 4192000, at *2.

This case was filed back in September of 2008; and due to delays, discovery has yet to begin. Of particular concern here, then, is the possibility that further postponing discovery by staying this case will prevent Plaintiffs from obtaining information related to whether employee participation in raffles was mandatory at the WCTAC and whether any of the plaintiffs were terminated for any of the wrongful reasons asserted. The Court expects that if information exists as to the alleged culture or environment of intimidation at the WCTAC, it will most likely have to be elicited through written interrogatories and oral depositions of the plaintiffs and others who took part in or witnessed any liability-creating transactions. Because such information is couched in memory, the integrity of this information is in danger of degrading over time, and here, considerable time has already elapsed since the alleged events that gave rise to this suit took place.[13] The last of the plaintiffs to have worked at the WCTAC were terminated in early-September, over six months ago. Most of the other plaintiffs resigned or were terminated in early-to-mid 2008, and some in 2007. Thus, because most of the evidence in this case will consist of witness testimony, continued delay will only serve to further prejudice Plaintiffs' ability to obtain discovery.

[13] The Court notes that while there is also a danger of losing documentary evidence due to the delay, this would probably not be of great consequence to Plaintiffs' case. Any documents would most likely be relevant only for purposes of establishing that raffles actually took place at the WCTAC. But as already discussed, whether raffles occurred at the WCTAC would not, of itself, establish Defendants' liability in the civil case. Furthermore, Novoa and Barrera generally admit in their answers to the complaint that raffles took place.

Regarding the issuance of an indictment against Novoa, it could be argued that "the prejudice to the plaintiffs in the civil case [would be] reduced since the criminal case

**APPENDIX 45**

[would] likely be quickly resolved due to Speedy Trial Act considerations." *See Plumbers and Pipefitters,* 886 F.Supp. at 1139. However, such an argument may not have as much force when the criminal defendant faces indictment by the State of Texas versus the federal government. Under the Speedy Trial Act, it is generally required that a federal criminal trial begin within 70 days after a defendant is indicted \*406 or makes an initial appearance. *See* 18 U.S.C. § 3161(c)(1). Thus, after indictment by the federal government, the Speedy Trial Act effectively limits the duration of a stay in a parallel civil case. The State of Texas, on the other hand, has no Speedy Trial Act.[14] Accordingly, where a defendant has been indicted by the State of Texas, there is no statutory mechanism by which to set the possible durational limits of a parallel civil action in federal court.[15]

[14]    In 1987, the Texas Court of Criminal Appeals held that the Texas Speedy Trial Act was unconstitutional because it violated principles of separation of powers under the Texas Constitution. *Meshell v. State,* 739 S.W.2d 246 (Tex.Crim.App.1987).

[15]    The Sixth Amendment itself is not effective in defining such limits. "It is ... impossible to determine with precision when the [Sixth Amendment right to a speedy trial] has been denied." *Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Whether a defendant has been deprived of this right requires the consideration of several factors, including the length of the delay and whether the defendant has asserted his rights. *Id.* at 530, 92 S.Ct. 2182. A presumption of prejudice against the accused does not trigger until at least one year from arrest or indictment. *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

Here, because Novoa has been indicted by the State of Texas, it is difficult for the Court to determine the duration of a possible stay in this civil case. In fact, the indictment against Novoa was issued more than six months ago, and the Court takes judicial notice that Novoa's pending trial, which is currently set for May 18, 2009, has already been reset twice before. As for Barrera, there is no telling when, or even if, she will be indicted. Plaintiffs may have already been prejudiced by the delay that has occurred thus far, let alone by any further delay of an indefinite duration.

**3. The Court's Interests**

[10] The Court must also balance its own interests. One such interest is injudicial efficiency. "The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil case and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges." *Worldcom,* 2002 WL 31729501 at \*8. A court, then, must analyze whether, and to what extent, the outcome of the criminal proceeding would serve to simplify or "streamline" the issues and any possible discovery disputes. Of course, this all depends on the degree of overlap between the criminal and civil cases.

Here, there would be little "streamlining." Were the State of Texas to establish Novoa's guilt, this civil case would remain unresolved. Perhaps a criminal conviction against Novoa would establish to some extent, and merely as a threshold matter, that gambling did occur at the WCTAC and that Novoa collected any raffles monies. However, such a conviction would not speak to the actual bases of liability in this civil action. Coercing participation in an organized gambling scheme through threats of retaliatory termination, for example, is not the wrongful conduct for which Novoa has been charged. As such, it would not be addressed by the State in proving its criminal case, nor would it be adjudicated by the criminal tribunal.

The Court does realize that by proceeding with the civil case, there is a possibility that the Court will have to rule on selective claims of Fifth Amendment privilege and objections to specific information requests during the discovery process. \*407 However, Novoa and Barrera, the only two defendants moving for a stay, have not shown the Court, thus far, that they would selectively invoke their Fifth Amendment privilege. As already discussed, in their respective answers to the complaint, these defendants have generally admitted that raffles occurred at the WCTAC, and they have denied all other accusations that provide for the true basis of liability in this civil case. Therefore, it does not appear, at this time, that the Court will have to expend any significant amount of time and effort ruling on any claims of privilege.

Another interest for the Court to consider is judicial expediency, whether staying the civil case will interfere with its management of the docket. A court "has an obligation to move its docket, and not let cases languish before it." *In re Scrap Metal Antitrust Litig.,* 2002 WL 31988168, at \*7 (N.D.Ohio Nov. 7, 2002). But that is precisely the danger where, as here, a stay could be of indefinite duration. As discussed above, Novoa has been indicted by the State of Texas, which has no speedy trial act. Moreover, no indictment has even been issued in Barrera's case. Postponement of this suit until the

**APPENDIX 46**

conclusion of Barrera's criminal prosecution, if any, "would require this court either to 'rely upon fortuitous events to manage its docket,' or to guess what criminal acts [she] might be charged with, and consequently which limitations periods apply to those criminal acts ...." *Hakim,* 1993 WL 481335, at *2 (internal citation omitted).

### 4. The Public's and Third–Parties' Interests

[11] Finally, the interests of the public and third parties must be considered.[16] The public has an interest in the resolution of disputes with minimal delay, but only to the extent that the integrity of the defendant's rights can be maintained. *St. Martin,* 2008 WL 4534398, at *3; *State Farm Lloyds,* 2006 WL 3691115, at *3; *Frierson v. City of Terrell,* 2003 WL 21355969, at *4 (N.D.Tex. June 6, 2003). The degree of overlap is an important consideration in weighing the public's interests. As already discussed, there is no significant overlap between Novoa's criminal prosecution and the civil case, so her rights are not at risk. The status of Barrera's criminal case is also an important consideration. Barrera has not been indicted. Thus, the risk to her rights is presently unclear, and it is impossible to predict exactly when an indictment will be handed up against her, if at all. Here then, because the integrity of Novoa and Barrera's rights can be maintained without a stay, the public's interest in resolving the case with minimal delay weighs against a stay. *St. Martin,* 2008 WL 4534398, at *3.

[16] Typically, district courts have analyzed these two factors separately. Whether these two interests are considered independently or together is immaterial in the overall balancing of interests.

Third parties may also have an interest in resolving this case with minimal delay. Defendants are currently employed at the WCTAC. If Plaintiffs' allegations are true, the other WCTAC employees, who are not plaintiffs in this case, have an interest in not being the victims of threats, retaliation, wrongful termination, or pressure to leave their employment. If Plaintiffs' allegations are false, then Webb County and the WCTAC employees have an interest in exposing the truth promptly.

### Conclusion

After considering the various interests in this case, the Court finds that a stay of the entire case is not warranted.

As such, the Court DENIES Novoa's and Barrera's request to stay this case in its entirety. *408 All parties should begin discovery immediately. A stay order will be reversed when found to be immoderate or of an indefinite duration. *McKnight v. Blanchard,* 667 F.2d 477, 479 (5th Cir.1982). As such, a district court should carefully consider the time reasonably expected for the resolution of the criminal case. *See Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 545 (5th Cir.1983). Since Novoa's next state court date is set for May 18, 2009, the Court will GRANT a limited stay to continue as to Defendant Novoa only until May 24, 2009. During this period, no party should serve interrogatories, requests for admissions, or a notice of deposition on Novoa until May 25, 2009. All other requests for relief in Novoa and Barrera's motion are DENIED.

IT IS SO ORDERED.

### *OPINION AND ORDER*

MICAELA ALVAREZ, District Judge.

On May 25, 2009, Defendant Patricia A. Barrera ("Barrera") through her counsel filed an Emergency Motion in this cause of action.[1] [Dkt. No. 77].[2] In this Motion, Barrera moves the Court to (1) handle all future pre-trial matters in these cases; (2) vacate Judge Hacker's Opinions of May 1, 2009 and May 15, 2009; and (3) stay all discovery in this case for eleven months. Plaintiff filed a response on May 28, 2009. [Dkt. No. 81]. For the following reasons, the Court **DENIES** Defendant's Motion of May 25, 2009.

[1] The full title of this Motion is "Defendant, Patricia A. Barrera's Opposed Emergency Motion for Stay of Proceedings Pendiente Lite Directed to United States District Judge and Motion to Reconsider Magistrate Judge's Denial of Motion to Stay Proceedings, Motion for Vacation of Magistrate Judge's May 15, 2009 Order and Amended Scheduling Order and Motion for Protective Order and for Rule 26 Scheduling Conference." [Dkt. No. 77].

[2] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing.

**APPENDIX 47**

## I. BACKGROUND AND PROCEDURAL HISTORY

In January 1993, Defendant Barrera assumed elected office as Webb County Tax Assessor/Collector. [Dkt. No. 12 at ¶ 18]. Plaintiffs allege that soon thereafter the Webb County Tax Assessor/Collector's Office ("WCTAC"), where they worked, began to hold a series of raffles to raise money. [*Id.* at ¶¶ 19–22]. According to Plaintiffs, the purpose of one tri-annual raffle, the *"Rifa Entre Amigos"* ("Raffle Among Friends") was, in part, to benefit Barrera's re-election campaign. [*Id.* at ¶ 29]. Plaintiffs aver that all employees had to sell a specific number of raffle tickets for the *Rifa Entre Amigos. [Id.* at ¶¶ 22, 25–28]. WCTAC employees had to sell these tickets during both work and non-work hours. According to Plaintiffs, participation was mandatory and a condition of employment. [*Id.* at ¶¶ 25, 27]. Defendants, including Barrera, purportedly enforced participation in these raffles through threats of termination and retaliation. [*Id.* at ¶ 23].

Apart from participation in these raffles, Plaintiffs aver that Defendants began in 2000 requiring WCTAC employee participation in football pots (or betting pools). [*Id.* at ¶ 36]. Allegedly, WCTAC employees also had to campaign on behalf of Barrera in her re-election campaigns. [*Id.* at ¶¶ 70–82]. According to Plaintiffs, Barrera required WCTAC employees place campaign bumper stickers on their cars, maintain a campaign sign outside their house, and volunteer at her campaign headquarters. [*Id.* at ¶¶ 71, 73, 75]. *409 These required campaign activities and football pots allegedly also were enforced by threats of termination and retaliation. [*Id.* at ¶¶ 39, 71, 76–77]. Indeed, several Plaintiffs claim they were fired for refusing to engage in these activities. [*Id.* at ¶¶ 71, 77].

In 2007, the State of Texas Attorney General began to investigate the activities at the WCTAC based on "whistle-blowing" by WCTAC employees, including two of the Plaintiffs. [*Id.* at ¶¶ 43, 53]. Investigators with the Attorney General conducted interviews and issued Grand Jury subpoenas to WCTAC employees. [*Id.* at ¶¶ 48, 59, 66]. Plaintiffs allege that Barrera and the other individual Defendants threatened them with retaliation if they spoke to the investigators. [*Id.* at ¶¶ 49–52, 54–57]. According to Plaintiffs, those employees who testified or were suspected of testifying before the Grand Jury were terminated. [*Id.* at ¶¶ 67–68].

In September 2008, Plaintiffs, ten former employees of WCTAC, filed this instant federal civil cause of action.[3] Pursuant to 42 U.S.C. § 1983, Plaintiffs allege Defendants violated their First and Fourteenth Amendments civil rights. [*Id.* at ¶ 155]. Plaintiffs also allege that Defendants committed several state law offenses. [*Id.* at ¶¶ 175–194].

[3] All ten Plaintiffs had either resigned or been terminated from WCTAC at the time they filed this federal civil suit.

On December 16, 2008, Barrera answered Plaintiffs' Complaint. [Dkt. No. 36]. In her answer, Barrera admits that raffles occurred between the WCTAC employees. [*Id.* at ¶ 7]. Barrera also states that "part of the monies collected from the ["*Rifa entre Amigos*"] were utilized to pay for calendars and materials which were considered promotional in nature." [*Id.* at ¶ 9].

On January 22, 2009, Barrera along with Defendant Mary Ethel Novoa, filed a Motion requesting that the Court stay the civil proceedings in this case pending completion of the ongoing state criminal action against Novoa. [Dkt. No. 45 at ¶ 3]. A state grand jury indicted Novoa with gambling promotion and engaging in organized criminal activity the same day Plaintiffs filed their civil complaint in this lawsuit. [Dkt. No. 45, Ex. C]. On May 1, 2009, in a lengthy, well-reasoned opinion, Magistrate Judge J. Scott Hacker analyzed whether the Court in its discretion should stay all civil proceedings until the conclusion of Novoa's criminal case. [Dkt. No. 67]. Judge Hacker balanced the interests of the Defendants, the Plaintiffs, the Court, and the public. [*Id.*]. Judge Hacker focused particularly on whether defendants would be unfairly and unduly prejudiced defending this civil action. The simultaneous Texas Attorney General investigation might force them to assert their Fifth Amendment privilege against self-incrimination during discovery. Based on the balancing interests, Judge Hacker, however, determined that a total stay of the case was not warranted. [*Id.*]. Judge Hacker did grant a limited stay to continue as to Defendant Novoa until May 24, 2009 as she had been criminally indicted. [*Id.* at 26]. As to all other Defendants, Judge Hacker ordered that discovery begin immediately. [*Id.*]. Indeed, that same day Judge Hacker issued a proposed scheduling order with deadlines for all pre-trial events, including a discovery deadline. [Dkt. No. 68]. Judge Hacker ordered that the parties make any objections to the proposed deadlines by May 8, 2009. [*Id.*].

On May 8, 2009, Barrera filed a Motion entitled "Objection to Entry of Scheduling *410 Order, Advisory to Court, and Motion for Rule 26 Scheduling Conference." [Dkt. No 69]. In this motion, Barrera advised the Court that criminal proceedings had been initiated against her four days earlier, on May 4, 2009. [*Id.* at ¶ 3]. State prosecutors had extended a plea deal to her. [*Id.* at ¶ 4]. Based on these changed circumstances, Barrera also asked the Court to hold a Rule 26 Scheduling

APPENDIX 48

Conference. [*Id.* at ¶ 5]. At this conference, Barrera asserted that the Court should consider oral argument on a second motion to stay proceedings. [*Id.*]. Judge Hacker denied Barrera's objections and entered the previously proposed scheduling order. [Dkt. No. 72].

Then, on May 25, 2009, Barrera filed the Emergency Motion currently before the Court. [Dkt. No. 77]. In this Motion, Barrera first moves the Court "to stay all discovery in the matter for an eleven month period of time." [*Id.* at 1]. This request appears to be a Motion for Reconsideration of Judge Hacker's May 1, 2009 Order denying a complete stay of the civil action as well as a new Motion to Stay Proceedings. On May 15, 2009, the Webb County District Attorney filed a formal three-count Criminal Information and Complaint against Barrera. [*Id.*, Ex. A]. This Criminal Information and Complaint charges that Barrera knowingly (1) used or permitted another to use a building or room for gambling; (2) owned, manufactured, or possessed gambling paraphernalia; and (3) possessed for transfer or did transfer a card, stub, ticket, or check designed to serve as evidence of participation in a lottery. [*Id.*]. Second, Barrera requests that all "pre-trial matters be handled by the Honorable United States District Judge due to the procedural history of this cause ... and the actions of the Magistrate Judge ..." [*Id.* at 1–2]. Specifically, Barrera objects to Judge Hacker's Opinions of May 1 and May 15, 2009. [*Id.* at 5–6]. Barrera further asks that the Court to vacate these Orders. The Court will take up this second matter first.

## II. DISCUSSION

### A. MOTION FOR DISTRICT COURT TO HANDLE ALL PRE–TRIAL MATTERS

In her Motion, Defendant Barrera asks this Court to conduct all future pre-trial matters instead of Magistrate Judge J. Scott Hacker because the "Magistrate Judge's May 1, and May 15, 2009 Memoranda and Opinions clearly demonstrate his inability to handle pre-trial." [Dkt. No. 77 at 5–6]. As permitted under 28 U.S.C. § 636 and Southern District of Texas Local Rule 72, the Court referred all pre-trial non-dispositive matters in this case to Judge Hacker. 28 U.S.C. § 636(b)(1)(A) (2006) (stating that a "designated magistrate may hear and determine pretrial matters pending before a district court" with limited exceptions); S.D. TEX. LOCAL R. 72. When a magistrate judge decides a non-dispositive matter, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." FED. R. CIV. P. 72(a).

Factual findings are clearly erroneous when "the reviewing court upon examination of the entire evidence is left, with the definite and firm conviction that a mistake has been committed." *Bolding v. Comm'r of Internal Revenue,* 117 F.3d 270, 273 (5th Cir.1997) (citation omitted); *Lahr v. Fulbright & Jaworski, L.L.P.,* 164 F.R.D. 204, 208 (N.D.Tex.1996). The Court turns to analyzing Defendant Barrera's individual objections to the Magistrate Judge's Opinions of May 1 and May 15, 2009.

### 1. May 1, 2009 Opinion and Order

The Magistrate Judge's May 1, 2009 Opinion denied Barrera's first Motion to \*411 completely stay civil proceedings. [Dkt. No. 67]. Barrera's primary objection to the Opinion is that Judge Hacker has ignored the criminal investigation and subsequent proceedings against Barrera. Barrera contends that Judge Hacker found "the impending criminal proceeding[s] were too speculative" to stay the case. [Dkt. No. 77 at 7]. This is a self-serving simplification of the Opinion's analysis of one balancing factor, Barrera's private interest, in a four-part balancing test.[4] What Judge Hacker found was that the criminal investigation of Barrera had been ongoing since October 2007 and Barrera had not been indicted as of May 1, 2009. [Dkt. No. 67 at 403–404]. Thus, it was "speculative" to assume that the criminal investigation would significantly overlap with the civil case at that time. Judge Hacker could not have predicted that Barrera would be indicted on May 15, 2009. And for that reason, Judge Hacker added, "If Barrera is indicted and the conduct alleged in that indictment significantly overlaps with the conduct alleged in the civil suit, the Court will reevaluate whether a stay is warranted"—an analysis this Court will undertake in the second part of this Opinion. [*Id.* at 404]. More importantly, Judge Hacker determined that Barrera had not established that she could not protect herself by selective invocation of her Fifth Amendment privilege. [*Id.*]. Finally, these were Judge Hacker's conclusions as to only one factor in a four-part test. Judge Hacker also weighed the Plaintiffs', the Court's, and the public's interests in a stay.

---

4    Barrera does not appear to dispute the applicable legal standards set forth by Judge Hacker. Barrera quotes the six-factor test recited in *State Farm Lloyds v. Wood,* Civ. No. H–06–503, 2006 WL 3691115, at \*1 (S.D.Tex. Dec.12, 2006), but makes no specific objections to Judge Hacker's four-part balancing of interests test. Judge Hacker's four-part balancing of interest test incorporates all six factors recited in *State Farm Lloyds.*

Barrera also objects that the May 1, 2009 Opinion focuses too much "upon the factor of the potential (and speculative) prejudice to the Plaintiffs from the potential loss of testimony and evidence." [Dkt. No. 77 at 12]. The May 1, 2009 Opinion, however, does not focus primarily on the prejudice Plaintiffs may suffer by a stay in the civil case. It applies equal weight and analysis to Defendants', Plaintiffs', the Court's, and the public's interests in a stay. [Dkt. No. 67]. Based on its review of the May 1, 2009 Opinion, the Court finds that this Opinion is not clearly erroneous or contrary to law.

### 2. May 15, 2009 Opinion and Order

Judge Hacker's May 15, 2009 Opinion entered a Scheduling Order for this case and denied Barrera's renewed request to stay this cause of action. [Dkt. No. 72]. Barrera asserts Judge Hacker's "entire basis" for denying this renewed request "was the absence of any criminal proceedings against her." [Dkt. No. 77 at 7]. Barrera continues on to state that "a proffered plea arrangement does not suffice for Hacker to grant a stay of discovery and proceedings. Hacker requires a formal criminal charge." [Id.]. This argument fails to understand the nuances of Judge Hacker's May 15, 2009 Opinion. In the May 15, 2009 Opinion, Judge Hacker acknowledged Barrera's statement that the Texas Attorney General had contacted her about a potential plea agreement. [Dkt. No. 72 at 1].[5] Judge Hacker just *412 found that Barrera had not established that "she would suffer 'substantial and irreparable prejudice' if the civil case were allowed to proceed." [Id. (quoting SEC v. First Fin. Group of Texas, Inc., 659 F.2d 660, 668 (5th Cir.1981)) ]. Barrera had not demonstrated that she could not protect herself by selectively invoking her Fifth Amendment privilege in the civil proceeding or that she could not defend both her civil and potential criminal cases simultaneously. [Id. at 1–2]. Judge Hacker's denial of Barrera's renewed request was not just because of the absence of criminal proceedings against Barrera.

[5] At one point, Barrera claims that she filed a copy of the proffered plea agreement in the state case under seal for the Court's in camera review. [Dkt. No. 77 at 6]. Barrera's counsel gave the Clerk's Office documents which the Clerk's Office then gave to the Court. The Court, however, did not review them as they were improperly filed. Indeed, the Court handed them back to Counsel at a May 15, 2009 Show Cause Hearing. [Min. Entry of May 13, 2009].

Barrera also insinuates that Judge Hacker should have granted her renewed motion to stay proceedings as a result of the Webb County District Attorney filing a Criminal Information and Complaint against her on May 15, 2009. [Dkt. No. 77 at 7]. Barrera contends that Judge Hacker should have known of these events based on the local media's coverage of the criminal case. [Id.]. Indeed, Barrera asks, whether "... Barrera's subsequent arrest on the May 15, 2009 criminal information escapes Hacker's attention? Does Hacker live in a cocoon in spite of the plethora of publicity surrounding Barrera's arrest and booking? Is Hacker completely out of sync with the course of proceedings in the State Criminal Justice System given this publicity?" [Id.]. It is a bedrock principle that it is the parties' obligation to bring forth whatever evidence it wants the Court to consider. It is not Judge Hacker's obligation to follow the daily occurrences in a parallel state criminal case. As the Seventh Circuit has so aptly stated, "Judges are not like pigs, hunting for truffles" or events affecting cases before them. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991). Any evidence that Defendant Barrera wanted the Court to consider should have been filed with the Court. Moreover, a court should not rely upon local newspaper articles and news programs, both forms of hearsay, to keep abreast of events affecting a case before it.[6] These media sources are hearsay evidence that a court cannot properly consider for the truth of the matters asserted. See Pan–Islamic Trade Corp. v. Exxon Corp., 632 F.2d 539, 556–57 (5th Cir.1980), cert. denied, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981).

[6] Under Federal Rule of Evidence 201, a Court may take judicial notice of facts "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED.R.EVID. 201(b); Taylor v. Charter Med. Corp., 162 F.3d 827, 831 (5th Cir.1998). Courts have taken judicial notice of official court records and proceedings in other state or federal court cases. United States v. Capua, 656 F.2d 1033, 1038 n. 3 (5th Cir.1981). But the determination whether to take judicial notice of a fact is discretionary. FED.R.EVID. 201(c). A court only has to take notice of an adjudicative fact when requested by a party and supplied with the necessary information. FED.R.EVID. 201(d). That did not occur here.

Amidst these substantive objections, the Motion attacks Judge Hacker's personal character. At various points,

APPENDIX 50

Barrera avers that "[t]his case has become unmanageable for Hacker;" "this former prosecutor is the last Magistrate Judge who should be handling the pretrial" as well as "[d]oes Judge Hacker live in a cocoon." [Dkt. No. 77 at 4, 7]. The Motion also refers to Judge Hacker as just "Hacker." [*Id.*]. The Court reminds Counsel to direct objections to an opinion or order to the *413 merits of the opinion or order. Counsel should conduct himself befitting the profession. S.D. TEX. LOCAL R. OF DISCIPLINE 1 ("Lawyers who practice before this Court are required to act as mature and responsible professionals, and the minimum standard of practice shall be the Texas Disciplinary Rules of Professional Conduct."). Counsel is also reminded that the Texas Lawyer's Creed mandates that a lawyer "demonstrate [ ] respect for the Court ..." TEXAS LAWYER'S CREED: A MANDATE FOR PROFESSIONALISM (Sup.Ct. of Tex. and Tex.Crim.App. Nov. 1989).

In sum, Defendant Barrera has not established that any part of Judge Hacker's May 1, 2009 or May 15, 2009 Opinions are clearly erroneous or contrary to law. These Opinions do not "clearly demonstrate [Judge Hacker's] inability to handle pre-trial" matters as Barrera asserts. To the contrary, they are meticulously and well-reasoned opinions. Thus, the Court will not withdraw its referral to Judge Hacker of non-dispositive pretrial matters in this case. Accordingly, Barrera's Motion for the district court to handle all pre-trial matters is DENIED.

## B. THIRD RENEWED MOTION FOR STAY OF CIVIL CASE

Barrera next moves for a complete stay of this civil case until the criminal case against Barrera has concluded, a period of eleven months by Barrera's estimation. A district court has the discretionary authority to stay a civil case pending resolution of a parallel criminal case if the interests of justice require. *SEC v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 666–67 (5th Cir.1981) (citing *United States v. Kordel*, 397 U.S. 1, 11, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)). A stay is not a constitutional right. *Kordel*, 397 U.S. at 12 n. 27, 90 S.Ct. 763. District Courts within the Fifth Circuit traditionally have applied a six-factor test to determine whether the interests of justice require a stay. These factors are: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case including whether the criminal Defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the

courts; and (6) the public interest. *See, e.g., United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F.Supp.2d 758, 762 (W.D.Tex.2008) (citations omitted); *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F.Supp.2d 902, 905 (S.D.Tex.2008); *Holden Roofing, Inc. v. All States Roofing, Inc.*, Civ. No. H–06–3406, 2007 WL 1173634, at *1 (S.D.Tex. Dec. Apr. 18, 2007); *State Farm Lloyds v. Wood*, Civ. No. H–06–503, 2006 WL 3691115, at *1 (S.D.Tex. Dec.12, 2006).

Barrera's request for a stay has been thoroughly addressed by Judge Hacker's well-reasoned Opinion of May 1, 2009. [Dkt. No. 67]. To the extent that Barrera's pending request serves as an objection to the May 1, 2009 Opinion, the Court finds that the Opinion is not clearly erroneous or contrary to law and therefore, adopts it as this Court's Opinion. The Court also adopts the May 1, 2009 Opinion as it relates to the requested stay following Barrera's indictment, with the additional rationale as follows.

[12] Barrera first argues that her personal interests favor a complete stay in the civil case, now that she has been indicted. According to Barrera, the criminal and civil complaints overlap. [Dkt. No. 77 at 10–12]. The Webb County District Attorney indicted Barrera on May 15, 2009 for organized gambling promotion. [Dkt. No. 77, Ex. A]. The Court agrees that there is *414 a degree of overlap between Barrera's criminal prosecution in state court and the instant federal civil action. Both cases involve purported gambling activities that allegedly occurred at the WCTAC office. The Court, however, believes the sixty-day stay in discovery against Barrera granted on May 27, 2009 serves Barrera's personal interests. [Dkt. No. 80]. A complete stay is not necessary here. The Court does not know how long the state criminal case against Barrera will last. Texas does not have a Speedy Trial Act as in the federal system. A sixty-day stay also permits Barrera to investigate her ability and need to invoke the Fifth Amendment privilege during discovery. The Fifth Circuit has advised that a stay order will be reversed when found to be of an indefinite or immoderate duration. *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir.1981); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 257, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

Second, Barrera contends that Plaintiffs will not be prejudiced by waiting until the conclusion of the criminal case against Barrera. Barrera states the trial "will be transcribed and there will simply be no loss of testimony or documents." [Dkt. No. 72 at 12–13]. Barrera also implies that Plaintiffs' interests should not be considered: Plaintiffs "were the whistleblowers whose actions

culminated in a well-timed civil complaint" filed concurrently with the criminal actions. [*Id.*]. The Court disagrees and believes that Plaintiffs will be prejudiced by a complete stay. Plaintiffs here are not parties to the criminal case. They do not have the ability to preserve their interests in the civil case through the prosecution of the criminal case, as the Government might. Moreover, Plaintiffs have already waited over eight months in this case to begin discovery. A long delay can lead to a loss of evidence—documents can be misplaced or destroyed and witnesses' memories can fade. In turn, a loss of evidence can frustrate Plaintiffs' abilities to put forth an effective case. Therefore, Plaintiffs' interests militate against a complete stay in this case.

Third, Barrera avers that the Court's and public's interests weigh in favor of a stay. According to Barrera, the Court will have to "frequently intervene in the discovery process to make rulings on claims of Fifth Amendment privileges to now be asserted by Defendant Barrera during the pendency of the parallel state criminal action." [Dkt. No. 72 at 13]. Barrera believes these interventions will be a "burdensome task given this court's heavily congested criminal docket." [*Id.*]. The Court realizes that it may have to rule on selective claims of Fifth Amendment privilege and objections to specific requests during the discovery process. But Barrera fails to show the Court how she would invoke her Fifth Amendment privilege. Moreover, in her answer, Barrera has already admitted that raffles occurred at the WCTAC. The need for the Court's possible intervention does not outweigh the Court's desire for judicial expediency. A court "has an obligation to move its docket, and not let cases languish before it." *In re Scrap Metal Antitrust Litig.,* Civ. No.

1:02–0844, 2002 WL 31988168, at *7 (N.D.Ohio Nov.7, 2002). The public also has in interest in the resolution of disputes in a timely manner and the fair treatment of all parties. *St. Martin v. Jones,* Civ. No. 08–1047, 2008 WL 4534398, at *3 (E.D.La. Oct.2, 2008).

Based on its analysis of the Defendant's, Plaintiffs', Court's, and public's interests, the Court believes that a stay of the entire case is not necessary or warranted. The Court believes that a 60–day stay in all discovery as to the individual defendants is appropriate. This 60–day stay will permit the individual defendants to understand *415 the criminal charges against them and how to respond appropriately in this civil suit.

## III. CONCLUSION

The Court **DENIES** Defendant Barrera's Motion that this Court (1) handle all future pretrial matters in this case; (2) vacate Judge Hacker's Opinions of May 1, 2009 and May 15, 2009; and (3) stay all discovery in this case for eleven months.

IT IS SO ORDERED.

**All Citations**

625 F.Supp.2d 391

End of Document    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**APPENDIX 52**

2001 WL 55642
Only the Westlaw citation is currently available.

NOTICE: NOT DESIGNATED FOR PUBLICATION.
UNDER TX R RAP RULE 47.7, UNPUBLISHED
OPINIONS HAVE NO PRECEDENTIAL VALUE
BUT MAY BE CITED WITH THE NOTATION "(not
designated for publication)."

Court of Appeals of Texas, San Antonio.

In re Charles D. MESSERVEY Trust, Charles D.
Messervey d/b/a Art Images.

No. 04-00-00700-CV. | Jan. 24, 2001.

Original Proceeding, Related Trial Court Nos.
97-CI-06922 & 97-CI-14613. From the 225th Judicial
District Court, Bexar County, Texas, John J. Specia, Jr.,
Judge Presiding.

STONE, GREEN and DUNCAN, JJ.

**Opinion**

GREEN.

*1 In this mandamus action, we are asked to vacate the
order of the trial court abating the underlying state civil
lawsuit pending the outcome of a federal criminal
prosecution. Because we find the abatement overbroad,
we conditionally grant the writ in part.

### Background

The underlying trial court case arises out of an insurance
dispute. In 1996, Charles Messervey made a claim for
insurance benefits based on losses from a theft of certain
art from his residence. The defendant insurance company,
Northbrook Property and Casualty Insurance Company
(Northbrook), denied the claim, alleging Messervey
committed fraud by attempting to recover for more items
than he actually owned. On May 12, 1997, Messervey
filed suit against Northbrook.

On April 23, 1998, Messervey was indicted in federal
court on several counts of mail fraud stemming in part
from the alleged theft and insurance claim. The United
States intervened in the civil case on August 8, 1998, to
limit the discovery of information and witnesses vital to
the prosecution of the pending federal criminal
prosecution. On June 2, 1998, the trial court stayed all
discovery in the civil case for 90 days. On June 16, 1998,
the trial court lifted the stay. On July 28, 1998, the trial
court abated the civil proceeding, this time at the request
of Messervey based on his assertion of 5th Amendment
rights. On September 9, 1998, the abatement was lifted;
however, the parties disagree about the extent of the
court's order. Messervey claims the abatement was lifted
only to allow discovery to proceed; Northbrook contends
the proceeding was allowed to go forward in its entirety.[1]

---

[1]   Neither party provided a copy of the court order lifting
      the abatement on September 28, 1998. We have only
      copies of the proposed orders submitted to the trial
      court, reflecting the parties' disagreement over the
      scope of the court's ruling.

---

On August 11, 1999, Messervey was convicted by a jury
on all counts of the federal indictment, two of which
relate to his claim under the policy with Northbrook. At
the time this mandamus action was filed, Messervey was
still awaiting sentencing on the convictions.

On June 19, 2000, Northbrook filed a motion for
summary judgment. Messervey filed a motion for
continuance, objections, special exceptions, a motion to
strike the hearing, and a motion for leave to file a late
response. Messervey also sent notices of deposition for
Assistant United States Attorneys Jack Stick and
Margaret Embry and FBI Special Agent Jeff Allovio.
Messervey argued recently discovered evidence of
government threats and coercion made it necessary to
depose Stick, Embry and Allovio, in addition to certain
witnesses who testified in the federal criminal trial.

Following a July 14 hearing, the trial court entered an
order (the July 27 order) with the following provisions:

1) the summary judgment and all related objections,
special exceptions, etc., were taken under
advisement;

2) Messervey's motion for continuance was denied;

3) the motion to extinguish abatement[2] would be
reset for hearing at an unspecified later date;

---

[2]   This motion is not in the record before this court.

---

APPENDIX 53

4) the U.S. need not produce Jack Stiff, Jeff Allovio, or Margaret Embry or respond to any discovery until further order of the court; and

*2 5) the case was abated pending the trial court's ruling on the summary judgment.

On August 24, Messervey filed a motion for leave to file a motion to lift the abatement and to file a motion for ruling on the special exceptions, objections, and the motion for summary judgment. After some procedural wrangling, the trial court set all pending motions for September 8, 2000. It also modified the July 27 abatement order. The new order, signed September 1:

1) abates the entire case for 6 months or until the criminal case becomes final, whichever is sooner; and

2) requires all parties to obtain leave of court to file any further pleadings or set any hearings.

Messervey filed yet another motion to lift the abatement. He attempted to have it set for hearing on September 18 but the court refused. Subsequently, Messervey filed a motion for leave to request findings of fact and conclusions of law, a motion for leave to file an interlocutory appeal, and a request for preparation of the clerk's record and reporter's record. The trial court refused to file findings of fact and conclusions of law, but granted the other motions.

### Standard of Review

Mandamus issues only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other adequate remedy at law. *Walker v. Packer,* 827 S.W.2d 833, 839-40 (Tex.1992). The trial court abuses its discretion when it fails to properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record. *In re Doctors' Hosp. of Laredo,* 2 S.W.3d 504, 506 (Tex.App.-San Antonio 1999, orig. proceeding). In applying the abuse of discretion standard, we defer to the trial court's factual determinations, so long as they are properly supported by the record, while reviewing its legal determinations de novo. *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex.App.-San Antonio 1996, no writ).

Generally, there is no interlocutory appeal of the trial court's decision to abate a case because the order may be reviewed on appeal. *See Abor v. Black,* 695 S.W.2d 564,

566-67 (Tex.1985); *Coastal Oil & Gas Corp. v. Flores,* 908 S.W.2d 517, 518 & n. 1 (Tex.App.-San Antonio 1995, orig. proceeding). However, an abatement order may be reviewed in special circumstances, such as when the abatement is for an indefinite period or effectively vitiates a party's ability to present a claim or defense. *Gebhardt v. Gallardo,* 891 S.W.2d 327, 332-33 (Tex.App.-San Antonio 1995, orig. proceeding). The grant or denial of an abatement is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Gebhardt,* 891 S.W.2d at 332.

### Discussion

#### A. *Messervey's complaints*

In his first two issues, Messervey challenges the validity of the abatement orders of July 27 and September 1. In his third issue, he complains the trial court abused its discretion by not ruling on the motion for summary judgment. The fourth issue is not a separate ground for mandamus but presents Messervey's argument that mandamus is allowed because there is no adequate remedy on appeal. Because it impacts our jurisdiction, we elect to address Messervey's fourth issue first.

#### B. *Adequate Remedy by Appeal*
*3 Mandamus has been allowed:

(1) when the trial court's order of abatement is for an indefinite period of time. *Gebhardt,* 891 S.W.2d at 333.

(2) when a blanket stay of all discovery effectively vitiates or severely compromises a party's ability to present a claim or defense. *In re R.R.,* 26 S.W.3d 569, 573-74 (Tex.App.-Dallas 2000, no pet. h.); *Underwood v. Bridewell,* 931 S.W.2d 645, 646-47 (Tex.App.-Waco 1996, orig. proceeding).

(3) when the trial court refuses to rule on a motion within a reasonable time. *In re Ramirez,* 994 S.W.2d 682, 683 (Tex.App.-San Antonio 1998, orig. proceeding).

All of Messervey's complaints fall into one of the above categories. Therefore, if he can show the trial court abused its discretion, he has no adequate remedy by appeal and is entitled to mandamus relief.

APPENDIX 54

## C. *The July 27 Order*

We have no jurisdiction to issue a writ of mandamus based on the July 27 order because it has been superceded by the September 1 order, rendering the earlier stay moot. *See In re Taylor,* 28 S.W.3d 240, 245-46 (Tex.App.-Waco 2000, orig. proceeding). However, because part of Messervey's complaint about the September 1 order is based on an erroneous interpretation of the July 27 order, we briefly address the nature of the earlier stay.

There is a distinction between a formal plea in abatement and a discretionary stay based on considerations of docket control, comity, or inconsistent rulings. *See Evans v. Evans,* 186 S.W.2d 277, 279 (Tex.Civ.App.-San Antonio 1945, no writ). The trial court has inherent authority to manage its own docket. *Ho v. Univ. of Tex. at Arlington,* 984 S.W.2d 672, 693-94 (Tex.App.-Amarillo 1998, pet. denied) (no abuse of discretion for trial court to continue trial date *sua sponte* pending ruling on summary judgment). The power to temporarily stay a lawsuit "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."*Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936).

It is clear the July 27 abatement was a discretionary docket control order. The case had been stayed in the past and one of the motions before the trial court on July 14 (as noted in the order) was a motion to lift the stay. The trial judge, who is specially assigned to this designated complex case, is familiar with the pending criminal matter and the overall status of the lawsuits. He has the authority to stay the case temporarily while he considers the motion for summary judgment and determines whether the discovery sought by Messervey is relevant and necessary for Messervey to contest the issues raised by Northbrook. *See Ho,* 984 S.W.2d at 694.

## D. *The September 1 Order*

Messervey claims the September 1 order is void or, in the alternative, is an abuse of discretion.

Messervey says the September 1 order is void because the trial court could not act while the July 27 abatement was in effect. We disagree. First, the July 27 stay is not a statutorily mandated abatement which prevents the trial court from proceeding in the case. *Cf. In re Kimball Hill Homes Texas, Inc.,* 969 S.W.2d 522, 526-27 (Tex.App.-Houston [14th Dist.] 1998, orig. proceeding) (pursuant to statute, neither court nor parties could proceed until mandatory period of stay expired). Second, the July 27 docket control order was entered at the

discretion of the trial court and, by its own terms, was not a complete abatement of the case. The language of the order clearly contemplated further action by the trial court and the trial judge retained authority to modify his own docket control order. *See id.* at 525 (abatement order may allow for further proceedings); *Lumbermen's Mut. Cas. Co. v. Garza,* 777 S.W.2d 198, 199 (Tex.App.-Corpus Christi 1989, orig. proceeding) (same). The September 1 order was not prohibited by the July 27 order.

*4 Having determined the trial court had the authority to modify or lift the July 27 stay, we reach the validity of the September 1 abatement order. Some courts have stated a protective order is preferable to abatement as a means of limiting discovery where the government seeks to restrict civil discovery because disclosure could interfere with a criminal case based on the same facts. *Underwood,* 931 S.W.2d at 647;*Texas Attorney General's Office v. Adams,* 793 S.W.2d 771, 776-77 (Tex.App.-Fort Worth 1990, orig. proceeding). The trial court should not stay the entire lawsuit because to do so prevents the party opposing the stay from proceeding on its claims or defenses. *In re R.R.,* 26 S.W.3d at 574;*Underwood,* 931 S.W.2d at 647.We hold the appropriate remedy in this case is for the trial court to fashion individual protective orders.

The September 1 order is not indefinite because it terminates when the criminal case becomes final or in 6 months, whichever is sooner, a maximum time of 6 months. However, we hold it is overbroad because it abates the entire case. The better course for the trial court at this time is to fashion individual protective orders to protect the interests of the United States and the continuing prosecution of the criminal matter without completely curtailing prosecution of the civil case.[3]We conditionally grant the petition for writ of mandamus with regard to the September 1 order to allow the trial court to vacate the order in accordance with this opinion.[4]

---

[3]     By this opinion, we do not foreclose the possibility that a complete abatement of the civil suit might be appropriate at some future date.

[4]     Because we conditionally grant the petition with regard to the September 1 order, we need not reach the issue of whether it was error for the trial court to refuse to enter findings of fact and conclusions of law regarding the September 1 order.

**APPENDIX 55**

### E. *Failure to Rule on the Motion for Summary Judgment*

Messervey complains the trial court has no discretion to refuse to rule on the motion for summary judgment. We agree. "When a motion is properly filed and pending before a trial court, the act of giving consideration to and ruling upon that motion is a ministerial act, and mandamus may issue to compel the trial judge to act."*In re Ramirez*, 994 S.W.2d 682, 683 (Tex.App.-San Antonio 1998, orig. proceeding) (citing *Safety Kleen Corp. v. Garcia*, 945 S.W.2d 268, 269 (Tex.App.-San Antonio 1997, orig. proceeding)). However, the trial court has considerable discretion regarding the time it takes to rule.*Zalta v. Tennant*, 789 S.W.2d 432, 433 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding) (eighteen month delay not abuse of discretion).

We will not rush the trial court's decision nor will we direct the substance of the ruling.[5]We presume the trial court will act on the motion for summary judgment within a reasonable time after it vacates the September 1 order. The petition for writ of mandamus is denied with regard to the trial court's ruling on the motion for summary judgment.

[5] We note, however, the parties' concern about the effect of a summary judgment ruling on the federal conviction is irrelevant at this time. If Judge Specia grants the summary judgment, the entire dispute goes away. If he denies the summary judgment, he has done no more than rule that based upon the summary judgment evidence in the civil court record, there is a question of fact to be determined by a jury. This is not inconsistent with the federal jury verdict, which is not yet even final, based on evidence in the criminal trial, which may or may not be the same as what is finally presented in the civil trial.

### *Conclusion*

We deny the petition for writ of mandamus based on the July 27 order for lack of jurisdiction. Because we presume the trial court will act in a reasonable time on all pending motions, we deny the petition for writ of mandamus with regard to the motion for summary judgment. We conditionally grant the petition in part to allow the trial court to vacate its September 1order in accordance with this opinion. The writ will issue if the trial court fails to vacate its order within twenty days of the date of this opinion.

### All Citations

Not Reported in S.W.3d, 2001 WL 55642

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**APPENDIX 56**

Original Image of 251 S.W.3d 696 (PDF)

251 S.W.3d 696
Court of Appeals of Texas,
San Antonio.

In re Kevin GORE.

No. 04–07–00597–CV. | Dec. 12, 2007.

**Synopsis**
**Background:** State brought a civil action seeking forfeiture of personal property the state seized as contraband in a related criminal case, in which arrestee was indicted on felony drug charges. The 224th District Court, Bexar County, David A Berchelmann, Jr., J., abated proceedings and stayed discovery until the resolution of the criminal case. Arrestee petitioned for writ of mandamus.

**Holdings:** The Court of Appeals, Steven C. Hilbig, J., held that:

[1] trial court abused its discretion by arbitrarily and indefinitely abating civil forfeiture case, but

[2] issue of whether arrestee was entitled to discovery in civil forfeiture action was not ripe.

Writ conditionally granted in part.

West Headnotes (15)

[1] **Mandamus**
    Remedy at Law
    **Mandamus**
    Nature of Acts to Be Commanded

    A writ of mandamus will issue only to correct a clear abuse of discretion for which the relator lacks an adequate remedy by appeal.

    Cases that cite this headnote

[2] **Pretrial Procedure**
    Discretion of Court

    A trial court abuses its discretion in scheduling discovery when it acts in an unreasonable or arbitrary manner, or when it acts without reference to guiding rules and principles.

    Cases that cite this headnote

[3] **Mandamus**
    Matters of Discretion

    In seeking mandamus review of a trial court's resolution of factual issues, a relator must establish that the court could reasonably have reached only one decision.

    Cases that cite this headnote

[4] **Mandamus**
    Matters of Discretion

    A trial court has no discretion in determining what the law is or applying the law to the facts, and thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ of mandamus.

    Cases that cite this headnote

[5] **Controlled Substances**
    Proceedings

    Trial court abused its discretion by arbitrarily and indefinitely abating civil forfeiture case against arrestee until the resolution of related drug prosecution; abatement order halted all

**APPENDIX 57**

proceedings in the case, denied arrestee his right to full discovery, severely compromised his ability to develop his defenses, and denied arrestee any effective method of challenging the trial court's ruling for an indefinite period by suspending the proceedings. Vernon's Ann.Texas C.C.P. art. 59.05.

1 Cases that cite this headnote

[6]    **Mandamus**
⬅ Proceedings in Civil Actions in General

A trial court abuses its discretion for purposes of mandamus when it arbitrarily abates a civil case for an indefinite period of time.

1 Cases that cite this headnote

[7]    **Action**
⬅ Course of Procedure in General
**Pretrial Procedure**
⬅ Right to Discovery and Grounds for Allowance or Refusal
**Pretrial Procedure**
⬅ Sequence and Timing; Condition of Cause

The parties in the civil case are entitled to full discovery within a reasonable time, to develop their claims and defenses, and to have the case tried.

1 Cases that cite this headnote

[8]    **Abatement and Revival**
⬅ Identity of Causes and Issues
**Pretrial Procedure**
⬅ Sequence and Timing; Condition of Cause

The pendency of a criminal investigation, indictment, or other proceeding does not affect a contemporaneous civil proceeding based on the same facts or parties and does not justify abating or staying all discovery in the civil case until resolution of the criminal matter.

1 Cases that cite this headnote

[9]    **Abatement and Revival**
⬅ Nature of Other Action or Proceeding

Statute providing an exemption from disclosure for certain law enforcement and prosecutorial records under the Public Information Act did not mandate abatement of civil forfeiture case until the resolution of a related drug prosecution. V.T.C.A., Government Code § 552.108.

Cases that cite this headnote

[10]    **Abatement and Revival**
⬅ Nature of Other Action or Proceeding
**Pretrial Procedure**
⬅ Objections and Protective Orders

State's interest in protection from civil discovery in civil forfeiture action did not entitle state to abatement of action until the resolution of a related drug prosecution; although disclosure could interfere with prosecution, the proper remedy was an individually tailored protective order. Vernon's Ann.Texas Rules Civ.Proc., Rules 192.6, 193.3–193.4.

2 Cases that cite this headnote

[11]    **Pretrial Procedure**
⬅ Sequence and Timing; Condition of Cause
**Pretrial Procedure**
⬅ Objections and Protective Orders

It is not good public policy to deny civil litigants their entitlement to a fully authorized discovery to assist in preparation of the civil lawsuit merely because criminal matters may be pending; rather, the proper remedy is an individually tailored protective order.

**APPENDIX 58**

1 Cases that cite this headnote

[12] **Pretrial Procedure**
← Objections and Protective Orders
**Privileged Communications and Confidentiality**
← Waiver of Objections

Failure to timely plead and prove entitlement to protection from discovery can result in waiver of any objection or claimed privilege. Vernon's Ann.Texas Rules Civ.Proc., Rules 193.2–193.4.

2 Cases that cite this headnote

[13] **Pretrial Procedure**
← Objections and Protective Orders

When properly raised, a trial court has an obligation to weigh each discovery request and apply the law for discovery or protection to each request by determining the least restrictive way to protect both cases and the defendant's right to defend himself in the suit.

Cases that cite this headnote

[14] **Mandamus**
← Mandamus Ineffectual or Not Beneficial

Issue of whether arrestee was entitled to discovery in civil forfeiture action was not ripe for appellate court to address in mandamus proceeding, since trial court had not addressed the merits of citizen's discovery motion when it ordered the action abated pending resolution of related drug prosecution.

1 Cases that cite this headnote

[15] **Motions**
← Determination

A trial court has a ministerial duty to act upon motions properly filed and pending before it.

Cases that cite this headnote

*697 Original Mandamus Proceeding.[1]

[1]    This proceeding arises out of Cause No. 2006–CI–05009, styled *The State of Texas v. Six Thousand Four Hundred Four Dollars ($6,404.00) United States Currency; One (1) 2002 Kawasaki Motorcycle, VIN JKBVNCA112B509107; and Certain Property.* The record indicates the cause was assigned to the 224th Judicial District Court, Bexar County, Texas, in which the Honorable Gloria Saldaña is the presiding judge. However, the challenged order was signed by the Honorable David A. Berchelmann, Jr., the presiding judge of the 37th Judicial District Court, Bexar County, Texas. The reporter's record indicates the hearing was presided over by Judge Berchelmann sitting in the 224th Judicial District Court, Bexar County, Texas.

**Attorneys and Law Firms**

Markes E. Kirkwood, Law Offices of Markes E. Kirkwood, San Antonio, TX, for Appellant.

Troy L. Meinke, Assistant Criminal District Attorney, San Antonio, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by STEVEN C. HILBIG, Justice.

Kevin Gore seeks a writ of mandamus to compel the trial court to (1) vacate its *698 order abating a civil forfeiture action until several criminal prosecutions are completed and (2) order the State to provide discovery. We hold the trial court abused its discretion by abating the case and therefore conditionally grant the requested writ in part.

APPENDIX 59

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2006, the State of Texas filed a civil action against Gore pursuant to Chapter 59 of the Texas Code of Criminal Procedure seeking forfeiture of personal property the State seized as contraband. The civil case apparently arises from events that led to Gore's arrest and subsequent indictment for felony drug offenses. The State served Gore with various discovery requests together with the original petition. Gore responded to the discovery in May 2006 and also served requests for written discovery and notices of deposition upon the State. On June 8, 2006, the State filed a motion seeking abatement of the civil forfeiture lawsuit until the resolution of related criminal charges. The Honorable Joe Frazier Brown, Jr., ordered the State to respond to all outstanding requests for written discovery, but otherwise ordered the forfeiture action abated until December 31, 2006. The abatement order provided that Gore could file a motion to compel discovery after December 31, 2006; Gore could depose two deputy sheriffs and a representative of the State and could file a motion for summary judgment after January 1, 2007; and the case was set for trial on the February 12, 2007 jury docket. Pursuant to Judge Brown's order, the State filed its disclosures and responses to Gore's discovery requests on June 20, 2006. The State objected to two requests for production, one as irrelevant and the other as calling for work product. The State did not interpose any other any objections or claims of privilege. All of the State's unverified answers to interrogatories and most of its disclosures and responses to requests for production consisted of advising Gore to see the attached file.

In January 2007, Gore served the State with his notices of intent to depose two deputy sheriffs and a designated representative of the sheriff's department, and attempted to confer with the State about purported inadequacies in the State's responses to discovery. The State responded by filing a motion to continue the abatement. The motion was heard January 29, 2007, by the Honorable Karen Pozza, who continued the abatement until May 7, 2007. Judge Pozza also ruled that Gore could file and pursue a motion challenging the adequacy of the State's disclosures and responses to discovery. Gore then filed a motion to compel and for sanctions. The motion was heard by the Honorable David A. Berchelmann, Jr., who denied it without prejudice to Gore reurging the motion after the abatement was lifted.

The abatement ordered by Judge Pozza expired May 7, 2007, and Gore set his motion to compel and for sanctions

for a hearing on May 8. During the hearing, again before Judge Berchelmann, the State orally moved to continue the abatement. At the conclusion of the hearing, the trial court denied Gore's motion to compel without reaching the merits of the motion and ordered the case "abated in its entirety until the criminal case is resolved." Gore seeks relief from this last order, requesting this court to order Judge Berchelmann to "lift his abatement," allow Gore to conduct depositions, and order the State to "properly answer discovery" propounded by Gore.

## PREREQUISITES FOR MANDAMUS RELIEF

[1] [2] [3] [4] A writ of mandamus will issue only to correct a clear abuse of discretion for which the relator lacks an adequate remedy by appeal. *See* *699 *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A "trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles." *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998). "With respect to resolution of factual issues," "[t]he relator must establish that the trial court could reasonably have reached only one decision." *Walker*, 827 S.W.2d at 840. However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Id.*

## ABATEMENT

[5] [6] We have repeatedly held that a trial court abuses its discretion when it arbitrarily abates a civil case for an indefinite period of time. *See In re Sims*, 88 S.W.3d 297, 306 (Tex.App.-San Antonio 2002, orig. proceeding); *Gebhardt v. Gallardo*, 891 S.W.2d 327, 330–32 (Tex.App.-San Antonio 1995, orig. proceeding); *In re Messervey Trust*, No. 04–00–00700–CV, 2001 WL 55642, at *4 (Tex.App.-San Antonio, Jan.24, 2001, orig. proceeding) (not designated for publication). Nevertheless, the State argued in the trial court that because there were pending criminal proceedings, it was "absolutely entitled to a full abatement on everything." Gore disagrees, arguing a writ of mandamus should issue because there is no legal basis for abating the case and the trial court's indefinite abatement violates the open courts provision in article I, section 13 of the Texas Constitution.

**APPENDIX 60**

[7] [8] The parties in the civil case are entitled to full discovery within a reasonable time, to develop their claims and defenses, and to have the case tried. See *Colonial Pipeline*, 968 S.W.2d at 941–42 (holding that order abating discovery from all but small group of plaintiffs until that group's claims were resolved unreasonably interfered with defendants' ability to prepare a defense and was abuse of discretion); *In re R.R.*, 26 S.W.3d 569, 574 (Tex.App.-Dallas 2000, orig. proceeding) (holding blanket order staying discovery on main issue because of related criminal proceeding was abuse of discretion because it vitiated defendant's ability to prepare defense in civil case); *Trapnell v. Hunter*, 785 S.W.2d 426, 429 (Tex.App.-Corpus Christi 1990, orig. proceeding) (holding that refusal to proceed to trial by arbitrarily abating case violates article I section 13 of the Texas Constitution). "The pendency of a criminal investigation, indictment, or other proceeding does not affect a contemporaneous civil proceeding based on the same facts or parties" and does not justify abating or staying all discovery in the civil case until resolution of the criminal matter. *Gebhardt*, 891 S.W.2d at 330; see *Underwood v. Bridewell*, 931 S.W.2d 645, 647–48 (Tex.App.-Waco 1996, orig. proceeding) (abuse of discretion to abate civil forfeiture action until criminal prosecution completed); *McInnis v. State*, 618 S.W.2d 389, 392–93 (Tex.Civ.App.-Beaumont 1981, writ ref'd n.r.e.) (upholding trial court's refusal to continue civil disbarment case until final disposition of related criminal case), *cert. denied*, 456 U.S. 976, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982); *Messervey*, 2001 WL 55642 at *4 (abuse of discretion to completely abate civil case for six months solely because related criminal case is pending).

[9] A forfeiture proceeding is a civil case that "shall proceed to trial in the same manner as in other civil cases." TEX.CODE CRIM. PROC. ANN. art. 59.05(b) (Vernon 2006). Accordingly, absent authority to the contrary, Gore has the same right as any other civil litigant to obtain full discovery *700 within a reasonable time, develop his defenses, and proceed to trial. See *Underwood*, 931 S.W.2d at 646–47; see also *McInnis*, 618 S.W.2d at 393 ("We find no constitutional or statutory provisions granting this appellant the right to choose the case, either criminal or civil, which he desires to first proceed to trial."). In its response to the petition for a writ of mandamus, the State asserts it is entitled to abatement of the civil case "as a matter of statute." However, the State cites only to § 552.108 of the Government Code, which on its face only creates an exemption from disclosure for certain law enforcement and prosecutorial records under the Public Information Act. See TEX. GOV'T CODE ANN. § 552.108 (Vernon

Supp.2007). While courts have concluded this section creates a "law enforcement investigation" privilege,[2] the State has not pointed to a single case nor has our research disclosed any authority for treating such language as mandating abatement upon request of the State.

2    See *Hobson v. Moore*, 734 S.W.2d 340, 340–41 (Tex.1987).

The State argues the trial court acted within its discretion and did not run afoul of our holding in *Gebhardt* because the abatement will end when the criminal case is resolved and therefore is not "indefinite." The order at issue in *Gebhardt* abated the case until the latter of the running of the statute of limitations for any crime relevant to the civil pleadings or the final disposition of any criminal charges that might be brought. 891 S.W.2d at 329. We held that given the evidence before the court, it was impossible to determine when the abatement would end and thus indefinitely denied plaintiff the ability to develop her case and a forum to try her case *Id.* at 331–33. Likewise, there is nothing in this record that enables us to determine when the abatement will end. Moreover, whether the trial court's order exceeded its discretion does not turn solely on whether the abatement is "indefinite." In *Messervey* we considered an order that abated a civil case for a period of six months or until the criminal case was concluded, whichever occurred earlier. 2001 WL 55642, at *2. Recognizing that the abatement was not indefinite, we nevertheless conditionally granted a writ of mandamus to vacate the abatement order because by completely curtailing prosecution of the entire case, it was impermissibly overbroad. *Id.*, at *4.

[10] The State also argues this case is distinguishable from those cited above because it has provided Gore "extensive" discovery and any further discovery would interfere with confidentiality in law enforcement activities. The State provided disclosures and responses to Gore's written discovery requests in June 2006. However, Gore has contended for more than a year and a half that the responses are inadequate and he has been unable to obtain a hearing to test their adequacy. He has also been denied his right to depose the State's primary witnesses.

[11] [12] [13] We recognize the State may have a legitimate interest in seeking some protection from civil discovery because disclosure could interfere with a criminal prosecution based on the same facts. See *Texas Attorney General's Office v. Adams*, 793 S.W.2d 771, 776 (Tex.App.-Fort Worth, 1990, no pet.). But it is "not good public policy to deny civil litigants their entitlement to a fully authorized discovery to assist in preparation of the

**APPENDIX 61**

civil lawsuit merely because criminal matters may be pending." *Id.* at 777. Rather, the proper remedy is an individually tailored protective order. *See Underwood,* 931 S.W.2d at 647; *Messervey* 2001 WL 55642, at *4. The State, just as other civil litigants, must timely plead and prove its entitlement to *701 protection from discovery. *See* TEX.R. CIV. P. 192.6, 193.2, 193.3, 193.4. Failure to do so can result in waiver of any objection or claimed privilege. *See Hobson,* 734 S.W.2d at 340–41; *Scrivner v. Casseb,* 754 S.W.2d 354, 358 (Tex.App.–San Antonio 1988, no pet.). When properly raised, "the trial court has an obligation to weigh each discovery request and apply the law for discovery or protection to each request by determining the least restrictive way to protect both cases and the defendant's right to defend himself in this suit." *In re R.R.,* 26 S.W.3d at 574. The record does not disclose that the State timely pled and proved a "law enforcement investigation" privilege from discovery.

We conclude the trial court abused its discretion in abating the case until the criminal proceedings are resolved. Because the order halts all proceedings in the case, denies Gore his right to full discovery, and severely compromises his ability to develop his defenses, Gore has no adequate remedy by appeal. *See Colonial Pipeline,* 968 S.W.2d at 942; *Messervey,* 2001 WL 55642, at *3. Moreover, by arbitrarily and indefinitely suspending the proceedings, the trial court denied Gore any effective method of challenging the trial court's ruling for an indefinite period. *Sims,* 88 S.W.3d at 306; *Gebhardt,* 891 S.W.2d at 332–33. Accordingly, Gore has no adequate remedy by appeal and is entitled to mandamus relief.

## MOTION TO COMPEL

[14] [15] Gore also complains the trial court abused its discretion in denying his motion to compel discovery. However, a fair reading of the record reveals that the trial court did not address the merits of the motion, but denied it solely because it granted the State's motion to abate. Accordingly, the issue is not ripe and we decline to address it. The trial court has a ministerial duty to act upon motions properly filed and pending before it. *In re Ramirez,* 994 S.W.2d 682, 683 (Tex.App.-San Antonio 1998, orig. proceeding). We have confidence the trial court will consider and rule on the merits of the motion to compel within a reasonable period of time after the abatement order is vacated.

## CONCLUSION

We conditionally grant Gore's petition for a writ of mandamus regarding the trial court's abatement of the forfeiture suit. The writ of mandamus will issue if the trial court fails to vacate the abatement order within twenty days of the date of this court's order.

**All Citations**

251 S.W.3d 696

End of Document                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**APPENDIX 62**

Original Image of 891 S.W.2d 327 (PDF)

891 S.W.2d 327
Court of Appeals of Texas,
San Antonio.

Shay GEBHARDT, Relator,
v.
Hon. Juan GALLARDO, Respondent.

No. 04–94–00690–CV. | Jan. 9, 1995.

Republican candidate brought negligence and civil conspiracy claims against Democratic party officials and members concerning filing of Democratic candidate's nominating petition. The 150th District Court, Bexar County, Juan Gallardo, J., severed and abated negligence claim pending possibility of or pursuance of criminal charges against any of the defendants, and plaintiff sought review by mandamus. The Court of Appeals, Blair Reeves, C.J. (Retired), held that: (1) defendants' assertion of privilege against self-incrimination alone did not present legal basis for severance and abatement of negligence claim; (2) negligence claim was improperly severed from civil conspiracy claim since the two claims were based upon same facts and circumstances; and (3) where term of abatement of negligence claim was indefinite, Republican candidate had no adequate remedy at law for purposes of determining whether mandamus should issue.

Writ of mandamus conditionally granted.

West Headnotes (18)

[1]      **Mandamus**
         Remedy by Appeal or Writ of Error
         **Mandamus**
         Exercise of Judicial Powers and Functions in General
         **Mandamus**
         Matters of Discretion

         Party seeking mandamus relief must demonstrate that trial court has committed clear abuse of discretion or violated duty imposed by law, and that party has no adequate remedy on appeal.

1 Cases that cite this headnote

[2]      **Mandamus**
         Matters of Discretion

         Although appellate court rarely interferes with trial court's exercise of discretion, clear abuse of discretion warrants correction by mandamus when court issues decision without basis or guiding principles of law.

Cases that cite this headnote

[3]      **Witnesses**
         Proceedings to Which Privilege Applies

         Party does not lose Fifth Amendment right against self-incrimination in civil suit, whether or not criminal indictment is pending. U.S.C.A. Const.Amend. 5; Vernon's Ann.Texas Const. Art. 1, § 10.

6 Cases that cite this headnote

[4]      **Witnesses**
         Waiver of Privilege
         **Witnesses**
         Claim of Privilege

         Each assertion of privilege against self-incrimination rests on its own circumstances and must be raised in response to each specific inquiry or it is waived; blanket assertions of the privilege are not permitted. U.S.C.A. Const.Amend. 5; Vernon's Ann.Texas Const. Art. 1, § 10.

4 Cases that cite this headnote

[5]
**Abatement and Revival**
⟜Identity of Causes and Issues
**Action**
⟜Severance of Actions

Assertion of privilege against self-incrimination alone did not present legal basis for severance and abatement of negligence claim against defendant while criminal investigation of defendant arising out of same facts was pending, even though, if defendant asserted privilege at trial, plaintiff might request instruction on res ipsa loquitur; abatement would be akin to impermissible blanket assertion of the privilege. U.S.C.A. Const.Amend. 5; Vernon's Ann.Texas Const. Art. 1, § 10.

5 Cases that cite this headnote

[6]
**Abatement and Revival**
⟜Identity of Causes and Issues

Pendency of criminal investigation, indictment or other proceeding does not affect contemporaneous civil proceeding based on same facts or parties.

2 Cases that cite this headnote

[7]
**Witnesses**
⟜Effect of Refusal to Answer

Although it is constitutional error under Fifth Amendment to instruct jury in criminal case that it may draw inference of guilt from defendant's failure to testify about facts relevant to his case, Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. U.S.C.A. Const.Amend. 5.

6 Cases that cite this headnote

[8]
**Action**
⟜Severance of Actions

Claim is properly severable only if controversy involves more than one cause of action, severed claim is one that would be proper subject of lawsuit if independently asserted, and severed claim is not so interwoven with remaining action that they involve same facts and issues. Vernon's Ann.Texas Rules Civ.Proc., Rule 41.

1 Cases that cite this headnote

[9]
**Action**
⟜Severance of Actions

Trial court is afforded broad discretion in matter of severance. Vernon's Ann.Texas Rules Civ.Proc., Rule 41.

1 Cases that cite this headnote

[10]
**Action**
⟜Severance of Actions

Controlling reasons for severance are to do justice, avoid prejudice and further convenience. Vernon's Ann.Texas Rules Civ.Proc., Rule 41.

Cases that cite this headnote

[11]
**Action**
⟜Severance of Actions

Negligence claim by Republican candidate against Democratic party officials and members concerning filing of Democratic candidate's nominating petition was improperly severed from Republican candidate's civil conspiracy claim against same parties, since the two claims were based upon same facts and circumstances, and the concerns advanced by Democratic party officials in support of imposing restrictions on proceeding with negligence claim while grand

**APPENDIX 64**

jury investigation was pending would in large measure also be present in conspiracy trial. Vernon's Ann.Texas Rules Civ.Proc., Rule 41.

Cases that cite this headnote

[12] **Mandamus**
Proceedings in Civil Actions in General

Abatement is generally incidental ruling not susceptible to mandamus relief.

Cases that cite this headnote

[13] **Pretrial Procedure**
Discretion of Court

Trial courts generally have discretion in abatement decisions.

Cases that cite this headnote

[14] **Mandamus**
Modification or Vacation of Judgment or Order

Appeal is not appropriate remedy, for purposes of determining whether mandamus should issue, where ability to present viable claim was vitiated by pretrial order.

1 Cases that cite this headnote

[15] **Mandamus**
Proceedings in Civil Actions in General

Abated negligence claim was vitiated, for purposes of determining whether mandamus should issue as to abatement order, where claimant was prohibited from preserving

defendants' testimony through oral deposition on negligence issues while abatement order was in effect, so that evidence might become unavailable.

3 Cases that cite this headnote

[16] **Abatement and Revival**
Identity of Causes and Issues

Abatement of negligence claim by Republican candidate against Democratic party officials and members concerning Democratic candidate's filing of nominating petition, pending possibility of or pursuance of criminal charges against any of the defendants, was improper because term of abatement was indefinite due to impossibility of determining which statutes of limitation might apply and when they might expire. Vernon's Ann.Texas Const. Art. 1, § 13; Vernon's Ann.Texas C.C.P. art. 12.05.

1 Cases that cite this headnote

[17] **Mandamus**
Proceedings in Civil Actions in General

Revision of statute concerning authority of courts of appeal to issue writs of mandamus ordering trial judges to go to trial placed abatement under general principles of law applicable to mandamus. V.T.C.A., Government Code § 22.221.

1 Cases that cite this headnote

[18] **Mandamus**
Acts and Proceedings of Courts, Judges, and Judicial Officers

Indefiniteness of abatement of Republican candidate's negligence action against Democratic party officials and members concerning filing of Democratic candidate's

nominating petition rendered remedy at law inadequate, so that mandamus was appropriate. V.T.C.A., Government Code § 22.221.

Cases that cite this headnote

**Attorneys and Law Firms**

*328 John E. Clark, Goode, Casseb & Jones, San Antonio, for appellant.

Steven P. Price, Enrique G. Serna Martinez, The Law Offices of Steven P. Price, Randall C. Jackson, Jr., Speiser, Krause, Madole & Mendelsohn, Dwight P. Mosher, Robert A. Valdez, San Antonio, for appellee.

*329 Before JAMES F. ONION, Judge, (Ret.), CARLOS C. CADENA and BLAIR REEVES, C.JJ. (Ret.).

## OPINION

BLAIR REEVES, Chief Justice, (ret.).[1]

[1] Judge Onion, Justice Cadena and Justice Reeves were assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

Shay Gebhardt seeks review by mandamus of an order entered by the Hon. Juan Gallardo, visiting district judge, which severed and abated her negligence claim from an alternative claim of civil conspiracy.[2]

[2] The original lawsuit is styled and numbered *Shay Gebhardt v. Leo G. Pacheco, John W. Reynolds, Dwight Mosher, and Ramon G. Flores, Sr.,* No. 94–CI–05455, in the 150th District Court of Bexar County, Texas.

Relator, the Hon. Shay Gebhardt, the Republican candidate for judge of County Court-at-Law No. 3 of Bexar County, sued real party, John Reynolds, and three other Democratic party officials or members. The lawsuit alleges civil conspiracy and, in the alternative, negligence in promoting and certifying the filing of the nominating petition for the Democratic candidate and seeks actual and exemplary damages. Relator alleged that the Democratic candidate did not meet minimum filing standards because a number of the required 250 signatures on his petition were forgeries and/or had been added to the petition after the deadline had expired.

The trial court severed and abated the negligence claim pending the possibility of or pursuance of criminal charges against any of the defendants.[3] Relator seeks a writ of mandamus to order Visiting District Judge Juan Gallardo to rescind the order which severed and abated petitioner's negligence claim on grounds it was an abuse of discretion. Real party argues that his federal and state constitutional rights will be violated if plaintiff is allowed to explore matters in this civil action which are also subject to a grand jury investigation. Neither the transcript nor the statement of facts reveals any source for the court's finding. We are unable to find any legal basis for this ruling. We hold that the order of severance and abatement constitutes a clear abuse of discretion for which relator has no adequate remedy on appeal. Writ of mandamus is conditionally granted for the reasons set forth below.

[3] The order, dated October 4, 1994, states in pertinent part:

After considering the evidence, the arguments of counsel, and the post-hearing briefs filed by the parties, the court finds that the plaintiff's allegations could be read as a claim that the candidate's petition was altered while in the exclusive possession of some of the defendants, and that such allegations raise the possibility that the plaintiff may rely upon and may seek an instruction on the doctrine of res ipsa loquitur; therefore, the court enters the following order:

The plaintiff having advised the court that she elects not to amend her pleadings to exclude the claim for negligence comprising paragraph IV of her original petition, it is ORDERED that all of the allegations of paragraph IV of plaintiff's original petition, and all allegations of damage by reason of negligence in paragraph V of plaintiff's original petition be, and the same are hereby, SEVERED from this cause of action and assigned separate docket number 94–CI–14910.

It is FURTHER ORDERED that after severance, the severed cause number 94–CI–14910 shall be, and it is hereby, ABATED pending the final disposition of any criminal charges that may be brought against any of the defendants based on the allegations of fact contained in the severed paragraph IV of plaintiff's original petition, or until the expiration of the statute of limitations for any criminal offense with which any of the defendants could be charged on the basis of the allegations contained in the severed paragraph

**APPENDIX 66**

IV of the plaintiff's original petition, whichever occurs last.

## MANDAMUS AND THE ABUSE OF DISCRETION

[1] A party seeking mandamus relief must demonstrate that the trial court has committed a clear abuse of discretion or violated a duty imposed by law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). The Supreme Court emphasizes that the petitioner must also show that she has no adequate remedy on appeal. *Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992); *State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984).

[2] An appellate court rarely interferes with a trial court's exercise of discretion. However, a clear abuse of discretion warrants *330 correction by mandamus when a court issues a decision which is without basis or guiding principles of law. *See Johnson v. Fourth Court of Appeals,* 700 S.W.2d at 917; *Professional Microfilming, Inc. v. Houston,* 661 S.W.2d 767, 769 (Tex.App.—Fort Worth 1983, orig. proceeding). For example, a trial judge has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer,* 827 S.W.2d at 840. On the contrary, if a judge, by placing a particular construction on the law, deprives a citizen of an unquestioned legal right, and there is no other adequate remedy, mandamus will lie to review his judgment or decision on the question. *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 683 (1956); *State Farm v. Wilborn,* 835 S.W.2d 260, 261 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding); *see also Joachim v. Chambers,* 815 S.W.2d 234, 240 (Tex.1991) (trial court abused discretion by misinterpreting the Code of Judicial Conduct); *NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989) (trial court abused discretion by failing to apply proper legal standard to motion to disqualify counsel); *Eanes Indep. Sch. Dist. v. Logue,* 712 S.W.2d 741, 742 (Tex.1986) (trial court abused discretion by erroneously finding constitutional violation).

## THE FIFTH AMENDMENT PRIVILEGE

Defendant, John W. Reynolds, sought abatement of the lawsuit on the ground that he was a target of a grand jury investigation, that he had asserted his Fifth Amendment right against self-incrimination in this suit and its predecessor bill of discovery, and, according to his attorney, Reynolds did not want to be subjected to the intense light of civil discovery while the criminal investigation was pending.

[3] A party does not lose his Fifth Amendment right against self-incrimination in a civil suit. Whether or not an indictment is pending, a witness is entitled to assert this fundamental constitutional right. *See Maness v. Meyers,* 419 U.S. 449, 464, 95 S.Ct. 584, 594, 42 L.Ed.2d 574, 587 (1975) (Fifth Amendment may be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory); *Ex parte Butler,* 522 S.W.2d 196, 198 (Tex.1975) (Texas Constitution Art. I, sec. 10, guarantees privilege against self-incrimination, "fact that the inquiry is made in the course of a civil proceeding does not interdict the witness's privilege"); *Burton v. West,* 749 S.W.2d 505, 507 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding) (defendant in drug proceeds forfeiture case permitted to assert Fifth Amendment to discovery); *Smith v. White,* 695 S.W.2d 295, 297 (Tex.App.—Houston [1st Dist.] 1985, orig. proceeding) (defendants under indictment entitled to assert Fifth Amendment rights in civil custody dispute).

[4] [5] [6] The assertion of the privilege against self-incrimination must be raised in response to each specific inquiry or it is waived. Each assertion of the privilege rests on its own circumstances. Blanket assertions of the privilege are not permitted. *See United States v. White,* 589 F.2d 1283, 1286–87 (5th Cir.1979); *Meyer v. Tunks,* 360 S.W.2d 518, 523 (Tex.1962). The abatement of the negligence claim while the grand jury investigates potential criminal charges is akin to a blanket assertion of the Fifth Amendment privilege. The rationale for reversals in *White* and *Meyer v. Tunks* would militate against severance and abatement on a vague assertion of constitutional privilege regarding res ipsa loquitur. The pendency of a criminal investigation, indictment, or other proceeding does not affect a contemporaneous civil proceeding based on the same facts or parties. *See McInnis, v. State,* 618 S.W.2d 389, 393 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.) (disbarment suit may proceed while indictment pending against attorney on same grounds for same offense); *see also Meyer v. Tunks,* 360 S.W.2d at 523 (no presumption that attempt to take defendant's deposition in civil case is impermissible attempt to develop evidence in concurrent criminal proceeding). The Fifth Circuit has held that putting a defendant to trial in a civil case while criminal charges arising out of the same conduct were pending did not unconstitutionally force him to choose between preserving his Fifth Amendment privilege and losing his civil suit where there was *331 no indication that

APPENDIX 67

invocation of the Fifth Amendment would necessarily result in an adverse civil judgment. *See United States v. White,* 589 F.2d 1283, 1286–87 (5th Cir.1979) (decision on whether to testify in civil case is matter of trial strategy). The *McInnis* court stated: "We find no constitutional or statutory provisions granting this appellant the right to choose the case, either criminal or civil, which he desires to first proceed to trial." *McInnis v. State,* 618 S.W.2d at 393.

[7] In this case, the court severed and abated the negligence claim on the ground that plaintiff's pleadings may be construed to support a theory of res ipsa loquitur.[4] One is left, at this early stage in the proceedings, to assume that if the defendant exercises his right to silence under the Fifth Amendment, the plaintiff may, as a trial strategy, request an instruction on res ipsa loquitur on the negligence theory. Be that as it may, the United States Supreme Court distinguishes between a criminal and a civil case as to whether an inference of guilt may be drawn from a defendant's silence. It is clearly constitutional error under the Fifth Amendment to instruct a jury in a criminal case that it may draw an inference of guilt from a defendant's failure to testify about facts relevant to his case. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965). However, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810, 821 (1976). The Amendment "does not preclude the inference where the privilege is claimed by a *party to a civil cause.*" 8 J. WIGMORE, EVIDENCE 439 (McNaughton rev. 1961) (emphasis in original). The *Baxter* opinion lists a long line of cases which recognize "that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause." *Baxter,* 425 U.S. at 319, 96 S.Ct. at 1558, 47 L.Ed.2d at 822. Therefore, the assertion of the privilege against self-incrimination alone does not present a legal basis for severance and abatement of the negligence claim while a criminal investigation proceeds.

[4] The record before us does not reflect that this theory is alleged by the plaintiff below.

### SEVERANCE

[8] [9] [10] [11] The severed negligence claim and the civil

conspiracy claim are based upon the same factual allegations. A claim is properly severable only if

> (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.

*Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex.1990) (citing *Saxer v. Nash Phillips–Copus Co. Real Estate,* 678 S.W.2d 736, 739 (Tex.App.—Tyler 1984, writ ref'd n.r.e.)); TEX.R.CIV.PROC. 41. Rule 41 affords the trial court broad discretion in the matter of severance. "The controlling reasons for a severance are to do justice, avoid prejudice and further convenience." *Guaranty Fed. Sav. Bank, supra.* In this case, the third prong of the severance test is clearly missing. Relator has pled alternative theories of recovery. The severed claim is based upon the same facts and circumstances as the remaining claim. The parties are identical. While the elements of each claim are necessarily different, the proof required is all to be drawn from the same events. The severance order is interlocutory and nonappealable while the abatement is in effect.

Moreover, it is observed that the trial court's order leaves the relator free to try her civil conspiracy claim based on the same factual allegations without the restrictions the trial court has placed on the severed and abated negligence claim. The concerns advanced by the respondent to the trial court would in large measure also be present in the conspiracy trial. Severing claims into separate lawsuits without valid and sustaining reasons is not in the interest of judicial economy.

### *332 ABATEMENT

The trial court ordered the negligence claim abated pending final disposition of any criminal charges that may be brought against any of the defendants or until the statutes of limitation expire.

[12] [13] Abatement is generally an incidental ruling not susceptible to mandamus relief. *E.g., Abor v. Black,* 695 S.W.2d 564, 567 (Tex.1985) (citing *Pope v. Ferguson,* 445 S.W.2d 950, 954 (Tex.1969), *cert. denied,* 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970)). Further, trial

**APPENDIX 68**

courts generally have discretion in abatement decisions. *E.g., Dolenz v. Continental Nat'l Bank of Fort Worth,* 620 S.W.2d 572, 575 (Tex.1981).

[14] [15] The trial court should consider what effect, if any, the abatement of the negligence claim will have on the plaintiff's ability to prosecute the remaining conspiracy claim. *Walker v. Packer,* 827 S.W.2d 833, 843 (Tex.1992) recognizes that appeal is not an appropriate remedy where the ability to present a viable claim was vitiated by a pretrial order. The negligence claim in this case is vitiated because relator is prohibited from preserving defendants' testimony through oral deposition on the negligence issues while the abatement order is in effect. As time goes on, memories will likely dim and evidence become unavailable.

[16] Abating a case indefinitely, moreover, has been found to violate the open courts provisions of the Texas Constitution. *See Trapnell v. Hunter,* 785 S.W.2d 426, 429 (Tex.App.—Corpus Christi 1990, orig. proceeding). In *Trapnell,* survivors had filed a wrongful death suit against manufacturers of sulfite and foods containing it on a theory of products liability. Several months later they filed a second suit in federal court against the Navy under the Federal Tort Claims Act on theories of negligent food preparation and failure to warn. The federal case was stayed against the Navy pending completion of the products liability state case. However, the manufacturer defendants obtained an order abating the state case so they could seek intervention in the federal case. The federal district court denied their motion to intervene, nevertheless the state district court repeatedly refused to vacate his order of abatement. *Id.* at 427. The issue at the mandamus proceeding was whether the state court had a legal basis to abate the state cause in order to encourage all parties to settle their controversy in federal court. The appellate court held that the state court abatement denied the parties their right to a forum under the "open courts" clause of the Texas Constitution. *Id.* at 429.

The opinion noted that article I, section 13 of the constitution is generally not violated by abatement issued in deference to a pending suit in another court because the plaintiff may still pursue her remedy in the second court. *Id.* In *Trapnell,* both forums had been indefinitely foreclosed to the plaintiffs by court orders. "When the trial court sustains a plea in abatement, ... the plaintiff is effectively denied any other method of challenging the court's action for an indefinite period of time during which the cause of action remains in a suspended state....

A trial judge may not arbitrarily halt trial proceedings." *Id., citing Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1068 (1926); *Greenberg, Benson, Fisk and Fielder v. Howell,* 685 S.W.2d 694, 695 (Tex.App.—Dallas 1984, orig. proceeding) (citing the open courts provision of TEX. CONST. art. I, § 19).

[17] The Texas Supreme Court has also reasoned that mandamus would issue to force a trial judge to go to trial because there was no remedy by appeal. *Cleveland v. Ward,* 285 S.W. at 1068. At that time a statute authorized courts of appeal to issue writs of mandamus ordering trial judges to go to trial. Article 1824 was amended in 1984 to eliminate the specific authority to order a trial judge to proceed to trial before it was codified into the current statute providing our general mandamus jurisdiction. This revision places the abatement under the general principles of law applicable to mandamus. *See* TEX. GOV'T CODE § 22.221 (Vernon 1988). However, the *Howell* case cited above, construes this change to expand an appellate court's power to order a judge to proceed to trial in a pending case. *Greenberg, Benson, Fisk and Fielder v. Howell,* 685 S.W.2d at 695.

*333 [18] The term of abatement in the present case is indefinite. Statutes of limitations vary. The defendant testified that he did not know how long the abatement, if granted, would last. He did not furnish the trial judge with any information as to what crimes might be charged, so it is impossible to tell what statutes of limitations might apply. Moreover, statutes of limitations are tolled while an accused is absent from the state and tolled during the pendency of an indictment. TEX.CRIM.PROC.CODE ANN. art. 12.05 (Vernon 1979). It is, therefore, impossible to determine when the abatement will end. The indefiniteness of the abatement leads us to the conclusion that the relator has no adequate remedy at law.

For these reasons we have concluded that relator is entitled to a writ of mandamus to direct the trial court to rescind its order of severance and abatement. The writ will issue only in the event the trial court fails to act accordingly.

**All Citations**

891 S.W.2d 327

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX 69